YAGER vs. LARSEN and another.

EVIDENCE: *Husband's testimony in action against himself alone, not evidence against wife in suit against both.* EJECTMENT: *Ouster—Rights of tenant in common.*

1. A husband's testimony in a suit to which his wife was not a party, that he held certain land and built a fence around it as agent of the wife, is not admissible in evidence against her to show an ouster, in ejectment against both for said land.
2. Such testimony, if admitted, would not show an ouster, where the plaintiff claims only an undivided two-thirds of the land, and the wife (being on the land, claiming an interest,) may be presumed (in the absence of evidence to the contrary) to have owned the other third.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, for an undivided two-thirds of two acres of land, part of a certain fractional lot two; the boundaries of which part are described as commencing at the southwest corner of said fractional lot, thence running north along Wolf river 240 feet, thence east 350 feet to a certain fixed point, thence south 240 feet, thence west to the place of beginning. The complaint, after duly averring ownership, etc., in the plaintiff, alleges that on the 16th of October, 1866, he was ousted by the defendant *Johanna Larsen*, who has since held and still unlawfully holds possession, and excludes the plaintiff, etc. *Onon Larsen* is made defendant as husband of said *Johanna.* The joint answer of the defendants admits plaintiff's title, and that said Johanna is the lawful wife of said *Onon*, and denies the other allegations of the complaint.

On the trial (at the March term, 1867), the evidence introduced by the plaintiff was in substance as follows: One Christensen, whose land was adjacent to the tract in dispute, testified that his north fence was on the south side of said tract, the river on the west, and *Larsen* had a fence on the north, and there was then no fence on the east line, but

there was another piece of land on that side enclosed with the premises in dispute, making together a field of six or eight acres.   About an acre of the disputed tract lies between the river and a road running over said tract from witness's land.   The whole of the field above described was enclosed in July, 1864, except said acre.   In the spring of 1866, *Larsen*, by removing a fence previously maintained by him on one side of said road, and putting a gate across the road, threw said acre into said field.   In 1866 this field was occupied for pasture, *Larsen* having some cattle on it, and a Mr. Johnson some sheep.   One-half or three-fourths of an acre of the premises in dispute was ploughed in the fall of 1866, by one Onsen, brother of *Mrs. Larsen*.   Witness had always seen Onsen work for *Larsen*.   No other part of the field was ploughed.   In the fall of 1866 *Yager* tried to build a fence.   He had some posts there, part of which lay on the disputed land near the line; and they dug post holes fourteen or fifteen feet west of the line.   Witness saw *Larsen* on the land frequently during 1866; he and *Larsen* tried to dig a fountain on the line in July of that year; never saw him doing any work on the land except in digging the fountain and building the gate above mentioned; never saw *Mrs. Larsen* there; *Larsen's* family lived a quarter or half mile away, and not on adjoining land. One Forbes, a justice of the peace, testified that he recollected a suit before him, between *Yager* and *Larsen*.   " It was a trespass suit about this same land, fence and posts. He [*Larsen*] testified as to building fence.   He said he built fence as agent for his wife.   My impression is, that he testified about the possession of the land—that his wife had possession, or he did as agent for his wife.   My minutes, however, do not show that."   On cross-examination:   " It was a fence on one of the lines that Larsen spoke of; I can't tell which.   The question was asked, and he said he was

acting as agent for his wife. I think he also stated that he occupied it as agent for his wife, but I am not positive; my impression was, that in relation to that land he was acting as agent for his wife." Christensen, being re-called, testified that he was present at the trial before Forbes, and that *Larsen* was asked if he built fence and made improvements on the land as agent for his wife, and he said he did. The plaintiff testified that in July, 1866, he put fence posts on said land, and on the 18th of October, undertook to build a fence on the land, and after he had built a portion of it, *Larsen* and his men forcibly took the fence and posts away. Witness further said : " *Larsen* ploughed one-half or three-fourths of an acre. I told him to stop; he told me I had nothing to say about it, and kept on ploughing. I heard his testimony in the suit before Forbes. He pretended to hold possession of the land as general agent for his wife." On cross-examination, he testified that at the time he was trying to put up a fence on the land, *Larsen* claimed to hold the land under a tax title owned by one Allen. " I saw Allen about his claim, but did not buy it. I bought of Mrs. Gumaer, and claimed under her, and *Larsen* under a tax title." On re-direct examination, plaintiff further testified that it was about the last of July, 1866, that *Larsen* told him about the tax title. Plaintiff then put in evidence two tax deeds, 1. One to *Johanna Larsen,* dated September 10, 1866, of undivided eighteen acres of said fractional lot 2. Received against objection. 2. One to said Allen, dated November 11, 1865, of undivided 25 acres of said fractional lot 2. Thereupon, plaintiff having rested, defendants moved for a nonsuit, which was denied. *Onon Larsen* then testified for the defense : " I took possession three years ago of part of fractional lot 2, down to the road; built a fence on the north side and along the road three years ago; did not fence from the road down to the river; there was an old

fence from the road to the river; I put in the gate and removed the fence on east side of the road a year ago this spring. I was asked on the trial before Forbes, if I built the fence as agent for my wife; I said I supposed I did; she owned an interest there; I was in possession when this suit was commenced; I was holding ⅛ for my wife, and the rest under Allen, under his tax title; I had held under it since a year ago last fall; I have been in possession since I built the gate till this suit commenced; I was. not asked before Forbes if I held possession for my wife." On cross-examination: "I own no lands in my own name; I carry on my wife's business; have charge of her real estate; I never claimed to hold this land under tax deed to. *Johanna Larsen*."

The court found the facts as alleged in the complaint, and that the damages for the wrongful detention were six cents; and, as a conclusion of law, that plaintiff was entitled to judgment against both defendants, for a recovery of possession and the damages. Judgment accordingly; from which both defendants appealed.

*Gary & Burnell*, for appellants.

*Felker & Weisbrod*, for respondent.

PAINE, J. We find no evidence either prior or subsequent to the motion for a nonsuit, to show any ouster by the defendant *Johanna Larsen*. There is nothing to show that she ever did anything herself, or authorized anything to be done, in respect to taking or holding possession of the disputed land. As we understand the evidence, it does not appear that the tax deed to her includes this land; so that the recording of that deed did not amount to any assertion of title by her to the portion here claimed by the plaintiff. There is nothing else connecting her in the remotest degree with the ouster, if there was one, except the proof of her

husband's testimony in a suit before a justice of the peace, that he built a fence and held the land as agent for his wife. It does not appear that she was a party to that suit, and what her husband stated there as a witness was not admissible evidence against her in this suit, for the purpose of charging her with an ouster, if it had been objected to. It does not appear that any objection was made; and therefore the evidence may be considered for what it is worth. But giving it all the effect that can justly be claimed for it, it is not of such a character as to charge her in this action. The plaintiff claims only an undivided two-thirds of the tract described in his complaint. If *Mrs. Larsen* owned the other undivided third, which may be assumed, her husband's building a fence around the property owned in common, as her agent, would not be such an exclusion of the other tenants in common as would authorize them to maintain ejectment. Assuming that he said he occupied the land as agent for his wife, according to the "impression" of Forbes, the justice of the peace, yet that statement does not show that he claimed to occupy the whole tract to the exclusion of others who might be joint owners, or that he asserted her claim in any manner inconsistent with their rights.

Furthermore, it cannot be inferred from those statements that she had ever given any directions in regard to the occupancy of this particular portion, or had ever assented to any acts that he may have claimed the right to do there as her agent. The statements are entirely consistent with the theory that she may have had an interest in the tract, as to which he was her agent, and that then, of his own motion, he committed these acts claiming to do them as her agent. If that was so, and these acts went beyond any right she had, and amounted to an ouster of the plaintiff, she would not be responsible, not having directed or ratified them.

These considerations, in connection with the plaintiff's own statement, that the husband expressly claimed to him to occupy under a tax title owned by Stephen Allen, convince us that there was not evidence sufficient to charge the wife with an ouster. If there was an ouster, it was by the husband, and the action should have been brought against him alone, so far as appears from this evidence.

The motion for a nonsuit should have been granted.

*By the Court.*—The judgment is reversed, with costs, and the cause remanded for a new trial.