SELDEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 21 — April 25, 1889.*

*Evidence: Confidential communications: Husband and wife: Attorney and client.*

On a trial for perjury alleged to have been committed by the plaintiff in a divorce suit in making affidavit and testifying that he had resided in the state for more than one year immediately previous to the suit, and that he did not know and could not ascertain the whereabouts of his wife, a witness, who had been the wife's attorney in an action to set aside the divorce judgment, in obedience to a *subpœna duces tecum* produced letters written by the husband to the wife a short time before the divorce suit was commenced, and which had been left by the wife with the witness. The wife did not consent to the production of the letters. The dates and places from which the letters appeared to have been written, the addresses to the wife and signatures of the husband, and the envel-

opes with the postmarks and addresses thereon, were admitted in evidence to show where the husband had resided during the year previous to the divorce suit, and that he knew or could have ascertained where his wife was. *Held* error, because those parts of the letters were confidential communications between husband and wife, and were also communications made by the wife to her attorney.

ERROR to the Circuit Court for *Fond du Lac* County. The case is sufficiently stated in the opinion.

For the plaintiff in error there was a brief by *C. S. Matteson*, attorney, and *Gerpheide & McKenna*, of counsel, and oral argument by *Maurice McKenna*. In addition to cases referred to in the opinion, they cited as to communications between husband and wife: *Kelly v. Drew*, 12 Allen, 107, 109, and cases cited; *Comm. v. Sparks*, 7 id. 534; 2 Starkie on Ev. (4th Am. ed.), 709. As to communications between attorney and client: *Wilson v. Rastall*, 4 T. R. 759; *Greenough v. Gaskell*, 1 Mylne & K. 102, 103; Phillips on Ev. 170–2; *Hatton v. Robinson*, 14 Pick. 421–2; *Brandt v. Klein*, 17 Johns. 335; *Parker v. Carter*, 6 Am. Dec. 513; 2 Best on Ev. 985; *Parker v. Yates*, 12 Moore, 520; *Anonymous*, 8 Mass. 370; *State v. Squires*, 1 Tyl. Rep. 147; *Pearse v. Pearse*, 11 Jur. 52.

The *Attorney General* and *L. K. Luse*, Assistant Attorney General, for the state, cited *Wood v. People*, 59 N. Y. 117, 123; *Doe dem. Courtail v. Thomas*, 9 B. & C. 288; *Mitchell's Case*, 12 Abb. Pr. 249; 1 Thompson on Trials, sec. 301; *People v. Davis*, 52 Mich. 569; *Comm. v. Griffin*, 110 Mass. 181; *State v. Center*, 35 Vt. 378; *State v. Buffington*, 20 Kan. 599; *State v. Hoyt*, 47 Conn. 518; 1 Greenl. on Ev. sec. 254*a;* 1 Whart. on Ev. (3d ed.), secs. 427–586.

ORTON, J. The facts necessary to an understanding of the errors assigned are substantially as follows: On the 25th day of July, 1887, there was an action pending in the circuit

court of Fond du Lac county in which the plaintiff in error was plaintiff and one Emma S. Selden, his wife, was defendant, for a divorce on the ground of adultery. The information charges that the plaintiff in error committed the crime of perjury by swearing falsely in a certain affidavit made by him before one James T. Green, Esq., a notary public of said county, in order to procure an order of publication of the summons in said action, and as a witness on the trial of said action, that he, said plaintiff in error, had been a resident of the state of Wisconsin for more than one year immediately preceding the commencement of said action, on said 25th day of July, 1887, and that, after due diligence and search, he was unable to find the whereabouts of the defendant, Emma S. Selden, and was unable, after due diligence, to make service of the summons in said action upon said defendant, and was unable, after due diligence and search, to ascertain the postoffice address of said defendant; and that when asked, as a witness on the trial of said action, "How long have you resided in the state of Wisconsin?" he falsely swore, "It is nearly two years;" and when asked whether he had seen the said Emma S. Selden since the 16th or 17th day of March, 1886, he falsely swore "that he had not;" and, when asked whether he knew the whereabouts of the said Emma, he falsely swore "that he had not been able to find out where she was."

The plaintiff in error was found guilty of the perjury so charged, December 29, 1888, and upon the verdict he was sentenced to the state prison for the term of two years. A motion was made to set aside the verdict, and for a new trial, and also a motion in arrest, which were overruled.

On the trial George P. Knowles, Esq., an attorney at law, was introduced as a witness for the state, and testified, substantially, that he was employed by Emma S. Selden, the defendant in said action for divorce, to get the judgment of divorce in said action set aside so as to allow her

to defend the same, and that while he was so employed the said Emma S. Selden placed in his hands certain letters, numbered from 1 to 65, which she received from the plaintiff in error while they were still husband and wife, and that in his opinion the signature to the same was in the handwriting of the plaintiff in error.   These letters appear to have been written by the plaintiff in error to his said wife, Emma, and directed to her under dates ranging from January, 1886, to June, 1887, at the place where she then resided in the state of Michigan, with their envelopes of the usual address, and mailed at various places.   He was asked to produce said letters.   This was objected to by the counsel of the plaintiff in error, and the objection was overruled.   The letters were then produced, and the district attorney offered in evidence the date and place from which the letters appear to have been written, the address to his wife, and the signature of the plaintiff in error, together with the envelope and the post-marks and address thereon, and did not otherwise offer the contents of said letters. This was also objected to by the counsel of the plaintiff in error, and the objection was overruled.   These parts of the said letters and the envelopes were admitted to show that the plaintiff in error knew the residence of the said Emma S. Selden at the time he so swore, and was able to find the whereabouts of the said Emma, and that he was able to make service of the summons in said action upon her, and that he could have ascertained after due diligence and search the postoffice address of said Emma, and that he was able to find out where she was at that time, and to show also his residence for the one year previous to said suit.   For that purpose these letters, to the extent in which they were offered in evidence, were most clearly material, if they were competent and not privileged.

It is contended by the learned counsel of the plaintiff in error that such evidence was incompetent and inadmissible,

for the reasons (1) that they were disclosures of confidential communications between husband and wife; and (2) that the production of the same by Knowles, the attorney of the defendant in that action, was also unlawful, as betraying the privileged confidences between himself and her, as attorney and client.

We think that both of these positions were well taken, and that the circuit court erred in allowing the said Knowles to produce them, and in allowing the letters, to the extent offered, to be used as evidence or examined by the jury. So far as Knowles, the attorney of the defendant, Emma, was concerned, the production by him of the letters as genuine was a double violation of this protected confidence,— *first*, of that reposed in him by his client, Emma S. Selden, and, *second*, of that between herself and her husband, without her consent. If these letters were confidential as between herself and her husband, they were none the less so in the hands of her attorney, Knowles, and if she could not disclose them of course he could not. But, besides this, he was betraying her confidences also, which was a double violation of the rule. She had demanded a return of these letters before he so disclosed and produced them. It is surprising that when she was unwilling herself to disclose or produce these letters of her husband, and was unwilling that her attorney, Knowles, should do so, Knowles should have been allowed to authenticate and produce them, and that the district attorney should have been allowed to introduce them in evidence, to the extent they were offered, to convict the husband of the crime with which he was charged. In her letter to her counsel, Knowles, dated December 1, 1888, she demanded a return of the letters, as she says, "in your charge and left with you while you were acting as my attorney and counsel. I intrusted them with you as such counsel, to be used only in assisting me in litigation, and from which to secure your advice. The letters

I consider confidential communications between myself and husband, and in no other way, and while I was your client I intrusted them with you knowing the confidential relations existing between attorney and client." This letter was in evidence.

The authorities cited by the attorney general are very far from being applicable to a case like this. Knowles was not an "eavesdropper," or a person who merely overheard communications or conversations between husband and wife, and it made no difference in favor of their admissibility that he used the letters as his authority for making the original complaint against the plaintiff in error, or in instituting the prosecution against him. It is a case where the husband is on trial for a crime which did not involve any personal violence or injury against herself, and what he had said or communicated to her as his wife is sought to be proved against him, either by his (the attorney's) voluntary disclosure of them as a witness, or by the production of his letters containing such communications; and, more than this, the letters containing such confidential communications are confided to her counsel for no such purpose, and he voluntarily authenticates and produces them, in violation of her confidences with her husband and her confidences with himself as her counsel, and without her consent and against her directions. There is not an authority by the decision of any respectable court that sanctions the disclosure of such confidences between husband and wife and attorney and client. It is too plain for argument.

But it is said that the particulars of the letters and envelopes admitted in evidence were not the letters themselves containing such confidential communications. These particulars were material parts of the letters and pertinent to the issue. Without them there would be no letters or envelopes, as such. He has told her by these particulars that he knows where she lives, and where she can be found, at

the time he swore that he did not so know.    These parts of the letters and envelopes contained these material and confidential communications, and are the most objectionable of any.

Both branches of this evidence are made incompetent by our statute.    "A husband or wife shall not be allowed to disclose a confidential communication made by one to the other during their marriage, without the consent of the other."    Sec. 4072, R. S.    "An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment."    Sec. 4076, R. S. These statutes express the most stringent rules ever laid down by the courts for the protection of connubial and professional confidences.    They would seem to have been specially made for this case.    The facts here meet every letter of these statutes.

Aside from these statutes, this disability of husband and wife and of an attorney has been established by numberless decisions of the courts in this country and in England. The principles upon which it is established have become elementary.    Only a few cases need be referred to, and such as are particularly applicable to the facts.    *Mills v. U. S.* 1 Pin. 73; *State v. Dudley,* 7 Wis. 664; *Livesley v. Lasalette,* 28 Wis. 38; *Yager v. Larsen,* 22 Wis. 184; 1 Greenl. Ev. §§ 334–7, 342; 2 Russ. Crimes, 986; 2 Kent's Comm. 178; *Stein v. Bowman,* 13 Pet. 209, 221; *Dexter v. Booth,* 2 Allen, 559; *Bliss v. Franklin,* 13 Allen, 244; *Fitch v. Hill,* 11 Mass. 288; *State v. Welch,* 26 Me. 30.    As to the relation of attorney and client, we may refer to *Getzlaff v. Seliger,* 43 Wis. 297; *Bacon v. Frisbie,* 80 N. Y. 394; *Root v. Wright,* 84 N. Y. 72; *Foster v. Hall,* 12 Pick. 93; *Bolton v. Liverpool,* 1 Mylne & K. 88; *Greenough v. Gaskell,* 1 Mylne & K. 98; *Moore v. Terrell,* 4 Barn. & Adol. 870; *Brown v. Payson,* 6 N. H. 445; 1 Greenl. Ev. §§ 237–240, and

note; *Hatch v. Fogerty*, 40 How. Pr. 498–504. Many other cases are cited in the able brief of the learned counsel of the plaintiff in error, to which reference may be had. This evidence was material to prove the perjury charged, and its admission was clearly erroneous.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Fond du Lac county, who will hold him in custody until he shall be discharged by due course of law.

NOTE.— The statements in this opinion, that George P. Knowles, Esq., as the attorney of Emma S. Selden, *voluntarily* produced the letters in evidence, and that in doing so he violated the confidence reposed in him by said Emma, were justified by the evidence as it appears in the printed case, which was supposed to be correct. It now appears, however, that there was evidence before the circuit court that Mr. Knowles produced said letters in obedience to a *subpœna duces tecum* and the ruling of the court, and that Mrs. Selden consented to Mr. Knowles keeping said letters to justify him in making the affidavit and complaint in the case before a justice, and that the opinion in these respects has done injustice to Mr. Knowles. Those statements are therefore stricken out of the opinion. Mr. Knowles is an attorney at law, and has the standing and reputation of an able, impartial, honest and honorable lawyer, and it now appears that he did nothing in relation to this case that detracts in the least from that standing and reputation.

This note is appended to the opinion by Mr. Justice ORTON in justice to Mr. Knowles.