75  461
93   52
93  353
75  461
98  624

SMITH, Respondent, vs. MERRILL, Appellant.

*December 11, 1889 — January 7, 1890.*

*Husband and wife: Criminal conversation: Evidence.*

1. In an action for criminal conversation a note addressed to the defendant, written by the plaintiff's wife in his presence and seen and copied by him, but, so far as appears, not sent to or seen by the defendant or any one else, is a confidential communication between husband and wife, and inadmissible in evidence on behalf of the plaintiff.

2. In such an action it is *held* that it was error to permit the plaintiff, on his re-direct examination, to testify as to statements made to him by the defendant's mother tending to show the defendant's criminality, although on his cross-examination the plaintiff had been questioned as to the conversation in which such statements were made.

APPEAL from the Circuit Court for *Dodge* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages alleged to have been sustained by the plaintiff by reason of the defendant having wrongfully and wickedly debauched and carnally known the plaintiff's wife, Addie, in March, 1887. The answer, after admitting that the plaintiff and Addie were husband and wife, consisted of a general denial. At the close of the trial, the jury returned a verdict in favor of the plaintiff, and assessed his damages at $1,800. From the judgment entered upon said verdict the defendant appeals.

For the appellant there was a brief by *Finches, Lynde & Miller* and *E. P. Smith,* and the cause was argued orally by *E. P. Smith* and *J. E. Malone.*

*James J. Dick,* for the respondent.

CASSODAY, J.  1. A careful consideration of the record forces us to the conclusion that there were at least two substantial errors upon the trial. On the plaintiff's direct ex-

amination he testified to the effect that he had an alterca-
tion with the defendant one night in the spring of 1888, in
consequence of the latter's intimacy with his wife; that
after that affair took place some papers were drawn; "that a
note was written by his wife the same day the paper was
drawn; that he took the original from her bosom, agreed
to return it, *copied it*, and gave it back to her; that he saw
his wife write it and put it in her bosom." The papers
mentioned appear to have been drawn May 2, 1888, and in
one of them, signed by the defendant, he promised: "That
I will not have anything to do with her [the plaintiff's
wife], or communicate with her, in the future." Thereupon
the plaintiff's counsel offered in evidence the "copy" of the
"note" so claimed to have been made by the plaintiff; and
the same was received in evidence, against several objec-
tions, and was as follows: "For God's sake! why did you
promise him any such thing? He wanted me to promise him,
but I would not promise him nothing." The note of which
this is said to be a copy does not appear to have been sent
to the defendant, nor to any one. It was simply written
by the wife in the presence of her husband, and then re-
tained upon her person. There is no evidence that any one
ever saw it before the trial except the wife and her hus-
band. There is no pretense that it was connected with any
matter of agency for the husband, and hence was not ad-
missible on that ground.

With certain exceptions, it was, at common law, against
public policy to allow the wife to be a witness for or against
her husband in any action, civil or criminal, to which she
was not a party. 1 Whart. Ev. §§ 422, 427; 1 Greenl. Ev.
§§ 254, 334, 335. That rule has not been changed by our
statute, except as will be presently noticed. *Farrell v.
Ledwell*, 21 Wis. 182; *Yager v. Larsen*, 22 Wis. 184; *Butts
v. Newton*, 29 Wis. 640; *Blabon v. Gilchrist*, 67 Wis. 45.
Sec. 4072, R. S., provides that "a husband or wife shall not

be allowed to disclose a confidential communication made by one to the other, during their marriage, without the consent of the other. In an action for criminal conversation, the plaintiff's wife is a competent witness *for the defendant* as to any matter in controversy, *except as aforesaid."* The first part of this section is confirmatory of the common law, and the last part is in contravention of it.

The note in question may not have been intended by the wife as a communication to the husband, confidential or otherwise. It may have been intended by her as a communication to the defendant, as claimed. But such communications, even after separation, are usually excluded, unless connected with some particular fact otherwise in proof; and they are always closely scrutinized. 2 Whart. Ev. § 1220. But, whatever may have been the intentions of the wife in writing the note, it was, according to the record, written in the presence of the husband, and became a communication from her to him, and unknown to any one else, and hence necessarily was and remained as essentially a confidential communication between husband and wife, until disclosed by one or the other, as though the same words had been uttered by her in the presence of the husband. This being so, the statute cited expressly prohibited the admission of the note, and much more a copy of it, in evidence. The rule as to the admission of such communications in evidence is very fully considered by Mr. Justice ORTON in the recent case of *Selden v. State,* 74 Wis. 271.

2. On the plaintiff's cross-examination by the defendant's counsel, he testified to the effect that the defendant's mother told him in the store, in October, 1886, that there were scandalous stories about the defendant and the plaintiff's wife; that the plaintiff should do the trading; that he had another conversation with the defendant's mother, at her house, in the spring of 1887; that he did not tell her that he saw nothing improper between the defendant and his

wife; that he had not kissed her upon leaving home, but was going to when he went home. It is claimed that the testimony so drawn out on cross-examination justified the evidence subsequently admitted, against the defendant's objection, on the plaintiff's redirect examination, to the effect that the defendant's mother told him, at her house, that he had got to get his wife out of town; that her husband was ready to buy the plaintiff's house and lot; that as soon as the defendant's wife should be confined she would be heart and hand with the plaintiff to break up the intimacy between his wife and the defendant; that, if it could not be done in any other way, she would take the defendant's wife to her house, and that the defendant could then go to hell; that she said she thought the defendant had not done right; that she had threatened to horsewhip the plaintiff's wife if she did not let the defendant alone. We are clearly of the opinion that such testimony was inadmissible, notwithstanding what had been so called out on cross-examination.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.