# CHARLESTON

STATE *v.* WOODROW.

Submitted September 15, 1905.    Decided December 12, 1905.

58    527
164    630

1. CRIMINAL LAW—*Witness—Husband and Wife.*

    A wife is not. a competent witness against her husband in a prosecution for crime.   (p. 528.)

2. CRIMINAL LAW—*Husband and Wife—Witness.*

    *Quaere.*   Is a wife or a husband a competent witness now against the other in a prosecution for crime committed against such witness.   (p. 531.)

3. CRIMINAL LAW—*Husband and Wife—Witness - Murder of Child.*

    A wife is not a competent witness against her husband in a prosecution against him for the murder of his infant child of the age of fourteen months, though the same pistol ball killed the child and wounded the wife, while the child was in her arms.   (p. 530.)

4. INDICTMENT—*Motion to Quash.*

    An indictment cannot be quashed because it rests, in whole or part, on incompetent evidence.   (p. 532.)

5. HOMICIDE—*Instructions.*

    Refusal of an instruction, on a trial for murder, giving the findings in the power of the jury, including one of involuntary manslaughter, is not error when no evidence in the case tends to show that degree of homicide.   Such instruction should not be given.   (p. 534.)

6. HOMICIDE—*Evidence.*

    Evidence of experiment to test the capacity of a child to fire a pistol is admissible to repel evidence of one accused of murder going to show that the child fired the pistol causing the homicide.   (p. 534.)

Error to Circuit Court, Mineral County.

William Woodrow was convicted of murder in the second degree, and brings error.

*Reversed.*

FRANK C. REYNOLDS, for plaintiff in error.

C. W. MAY, Attorney General, for the State.

BRANNON, PRESIDENT:

William Woodrow was indicted in Mineral county for the

murder of his child, Ruth Elizabeth Woodrow, and was sentenced to the penitentiary for eight years upon a verdict of murder in the second decree. The deceased, was a baby of fourteen months age, and was in the arms of its mother, at her breast, when a pistol shot killed it, the ball passing through the baby's head, and wounding the mother, according to her evidence. The accused offered a plea in abatement to quash the indictment on the ground that his wife had been examined before the grand jury; but the plea was rejected. On the trial the wife of the accused gave evidence at the instance of the State against her husband, over his protest.

Was the wife a competent witness against him? Elliott on Evidence, Vol. 2, § 736, states the law thus: "When the husband or wife was the defendant in a criminal prosecution the other was, at common law, incompetent either for or against the accused. The marriage relation, however, must be a lawful one or the rule generally has no application. And if the offence was committed by husband or wife against the other, the injured party is usually a competent witness, either for or against the accused, both at common law and under the statutes." That late work of great practical value cites many authorities for its text. Bishop's New Crim. Procedure, Vol. 1, § 1153, says that: "If personal violence is inflicted on the wife by the husband, she from necessity may, or if required must, testify to it in a criminal proceeding against him for the battery; and he may do the like if she beats him." This ancient rule of the common law is stated in all the books. The sole question in this case is, Does this case come within the exception to the rule; that is, was the prisoner's act of shooting the child a crime against the wife? It was not violence to her person. It was not a crime against her person corporeally. Such it has to be under this exception. It is true that there has been considerable difference of opinion as to what instances fall within this exception. Some cases hold that bodily violence to the wife is not the only case under the exception. For instance, cases of bigamy, and other cases, have been held to fall within the exception. The books must be resorted to for full discussion. It will be found that though cases where no actual violence constituting assault and battery upon the wife have been held to fall within the reason of the exception, yet they are cases

which directly affect the legal right of the wife, rights going along with her personality or person, as an individual separated from all other persons. However, I can safely say that the great bulk of American decision is, that to come within the exception the case must be one of *personal violence* to the spouse. *Basset* v. *U. S.*, 137 U. S. 496; *Baxter* v. *State*, 53 Am. St. R. 720; *Crawford* v. *State*, 67 *Id.* 829; *Commonwealth* v. *Sapp*, 29 *Id.* 406. And I repeat that those cases, like bigamy and others, that do not actually involve violence to the person, which are held within the exception, are cases where the wrong is to the *individual particularly and directly injured* by the crime for which the husband is prosecuted. *Dill* v. *People*, 41 Am. St. R. 254. But the instances mentioned—I mean the cases—not requiring actual violence to person are confined to a few states. The weight of authority is otherwise, requiring personal violence or a restraint of liberty to the wife, restraint of liberty being a wrong to her person. *Basset* v. *U. S.*, 137 U. S. 496. The act must touch her person, or her personal individual right, as a person distinct and individualized from the balance of the community, to come under the exception spoken of. An enormous wrong this murder was to the mother in a moral point of view, in an emotional point of view, in a sentimental point of view; in a pathetic point of view, under emotions of the heart which move human beings, owing to the relation of mother and child. We are apt to consider this terrible crime as a greater one against the mother than to any other living human being; still, in a physical point of view, the homicide did not touch the person of the wife, but was only a crime against her as one member of the community; I mean in the eye of the law. Remember that Woodrow was tried for killing the child, not for shooting his wife. On a trial for shooting his wife, she could, under the exception stated, give evidence against her husband, and could prove, if material, not only the shooting of herself, but also the shooting of the child, as part of the *res gestae;* but on his trial for killing the child the fact that the one ball did violence to both mother and child, does not alter the case. The homicide of the child is one distinct crime; the shooting of the mother another distinct crime. The close connection of the two in time and circumstances does not blend the results of the ball, and

34

make the killing of the child a personal or corporeal violence to the mother. To come under the exception the crime must be against the mother in a legal point of view. The rule of evidence as to *res gestae* will not admit the wife as a witness. Under that rule the question is, not the competency of the witness proving the things done or said, but whether the things themselves are proper to go before the jury, even though proven by a competent witness; whereas, here it is a question whether the witness is a proper one to prove the things done or said, admitting those things to be proper evidence, if deposed to by a competent witness. Necessity, the want of another witness, is pleaded for the admission of the wife's evidence in this case. That was the parent of the common law exception. But that necessity may often arise and call as loudly as in this case. Suppose the husband should kill a grown child in the privacy of the home, there being no other witnesses of the fact but the wife. Would this necessity admit her evidence? Suppose he would there kill the wife's grown sister or any one else. Would she be competent? I say not. If there were other witnesses present, would she be competent? I suppose not, as the necessity would not then exist. Then, the evidence would be competent or incompetent according as there was, or was not, another witness than the wife. Though we concede that the necessity meant by law in this instance is not merely necessity for some witness, but the necessity to protect the spouse, still that would not admit the wife's evidence in this case. It is suggested that tender age of the person injured causing incapacity to give evidence, calls for the wife's evidence. Does it depend on age? If so, the wife's competency or incompetency would rest on the age of the person injured. If a husband should kill a man in a field or highway, none but the wife of the murderer being present, would she be a competent witness against her husband? Surely not. Yet the cry of justice would be as loud in that case as in the present case. The necessity would be just as great. The accidental circumstance that no eye saw the deed but that of wife and husband would, in such case, just as much create a necessity for the wife's evidence as in this case. The ancient rule of the common law forbidding evidence of one spouse against the other stands intact today. Our Code in chapter 152,

section 19, reads thus: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, at his or her own request, (but not otherwise) be a competent witness on such trial and examination. The wife or husband of the accused shall also, at the request of the accused, but not otherwise, be a competent witness on such trial and examination." The object of this statute, in its latter clause, was to make the wife or husband a competent witness *for* the other, at his or her request. It is an enabling statute, because before it came neither could use the evidence of the other. It enlarges the right of the accused by giving him or her the right to introduce his or her spouse as a witness; but it does not enlarge the right of the *State*. Before that statute the State could not introduce the wife against the husband, or the husband against the wife; neither can it do so since that statute. That statute does not touch this case. Whether it has by the words, "but not otherwise," abolished the exception which the common law made to the rule excluding wife and husband, that is, the exception allowing them to give evidence of a crime done by one to the other, we do not say, because it does not arise in this case. If we view this instance as within the common law exception, then we would have to decide whether the statute changed the common law exception and made the wife incompetent. It may with force be said that the statute is very broad; that it makes one, and only one, exception to the rule of the incompetency of the spouse; that it only allows one to use the other as a witness; that the words, "but not otherwise," are an affirmative enactment, since they actually prohibit such evidence except in one, and only one, case. Reasons which may have operated in the Legislature for branding such evidence as incompetent wholly can be suggested. In many instances the one spouse wants to get rid of the other, and may give false testimony to accomplish it. Also it would, in some cases, breed animosity and marital dissension. The Legislature may have designed to utterly exclude its use in behalf of the State. If such was its design, it could scarcely have used more apt language than those prohibitory words. They are strong prohibitory words. Therefore, we conclude that the evidence of Woodrow's wife was improperly used against him.

Next, as to the plea in abatement. The law is thus stated in 17 Am. & Eng. Ency. L. (2 Ed.) 1283: "The court will not look behind the return of the grand jury to set aside an indictment because that body received improper evidence or the testimony of witnesses who were not competent to testify." Many cases there cited support this view. The Texas court said, in a case where a wife had been examined as a witness against her husband by a grand jury, "We cannot look behind the return of the grand jury and set aside an indictment because improper evidence has been received." *Dockery* v. *State*, 34 S. W. 281. Where the accused was examined by the grand jury it was held not to invalidate the indictment. *Mencheca* v. *State*, 28 S. W. 203. Some of the cases cited by the Encyclopaedia for its text above quoted are cases where the wife was before the grand jury giving evidence against her husband. *State* v. *Tucker*, 20 Iowa 508, and *State* v. *Boyd*, (S. C.) 27 Am. Dec. 376, and *State* v. *Dockery*, just cited. There are authorities to the contrary. In the wilderness of conflicting cases a court in these days can, at best, only select that line seeming to it the better one. Where is the better reason? In the first place, my own experience as a practioner and judge tells me, that it is not usual, under practice in this State, to challenge an indictment on either the ground of want of sufficient evidence to sustain it, or even the incompetency of evidence before the grand jury. It would be a practice of great inconvenience. Very plainly a court cannot go into the question of the weight and sufficiency of the evidence to sustain the indictment, and thus review the action of the grand jury. That would be for the court to usurp the office of the grand jury, and also to usurp the office of the petit jury, because the court is not the judge of the weight of the evidence, but the grand jury in the first instance is, and finally the petit jury. When once an indictment is returned a true bill, it has legal force; you cannot go behind the return; it is not void, and it only remains to try its truth. Where there is some legal evidence, though light, before the grand jury, the indictment cannot be quashed. Wharton, Crim. L. § 508; *State* v. *Logan*, 1 Nev. 509; *State* v. *Morris*, 36 Iowa 272. But how is it when the question is not one of sufficiency of evidence, but where incompetent evidence has been heard by the grand jury? The indictment

is not void.  Often incompetent evidence is heard by grand
juries, not merely incompetent matter, but incompetent wit-
nesses.  It would be an inconvenient and dangerous practice
to institute preliminary investigation to ascertain what in-
competent evidence was before the grand jury, how much
good and how much bad evidence, and what its weight.
Where there is any competent evidence before the grand jury
it cannot be quashed, though there may have been some
incompetent evidence of a witness, say the authorities just
cited.  This proposition would hardly seem to require
authority.  The court cannot say on what the grand jury
found its indictment, or how far the incompetent evidence
operated, or on what members it operated.  You cannot
call each member and ascertain on what evidence he formed
judgment.  Next, take the case where the indictment rests
alone on evidence of an incompetent witness.  In such
cases some authorities say that the indictment must go;
but even here, why shall we not say that on the trial the
state may furnish other evidence ample to sustain its indict-
ment which was not before the grand jury?  The indictment
is only a charge, to be sustained by competent evidence on
the trial.  So the court said in *State* v. *Dayton*, 53 Am. Dec.
270.  The accused can have the evidence, if incompetent,
excluded on the trial.  True, it is hard on him to be put to
trial upon an indictment resting alone on incompetent evi-
dence; but grand juries are not good judges of competency,
and often times do not consult the court.  It would be very
bad practice, endless inconvenience, to have a full prelimi-
nary trial of competence of evidence before the grand jury
in many cases.  How far would the practice go?  Does the
inconvenience to the accused justify the institution of such a
practice?  Are not his rights fully vindicated by his right to
exclude improper evidence on the trial.

Therefore, we conclude that the plea in abatement was
properly rejected.

The prisoner testified that his little boy less than three
years of age often played with the pistol which killed the
baby, and that on that fateful day he was playing with the
pistol and discharged it and thus the baby was killed.  The
State, to repel this defence, to meet this evidence, gave
evidence tending to show that the little boy had not capacity

to fire the pistol.    This evidence was that when the hammer of the pistol had been pulled back by a witness, the little boy's finger was placed upon the trigger, and he was asked to pull the trigger and throw the hammer, but was unable to do so.    The evidence was also that the little boy was asked to pull back the hammer, and was unable to do so.    This evidence was proper to go before the jury to say whether this defence of the prisoner was true or false.    It is suggested that the little boy may not have exerted his full strength to lift the hammer or pull the trigger.    This may, or may not, be so.    It does not appear that the child refused to try, or did not try, to do so, but the evidence fairly shows that he did make the effort.    Whether he used all his strength we cannot, we need not, say, since that is a question of probability or improbability before the jury, not a question of the admissibility of the evidence.    In short, its weight was for the jury.

Error is assigned because the court refused to allow a witness to prove that the prisoner told him at a point a quarter of a mile from the place of the homicide, when going for a doctor, just after leaving the spot, how the shooting took place.    It does not distinctly appear that the declaration was close enough in time or place to the transaction to be part of the *res gestae.*    Where the declaration is merely a narrative of a past occurrence, though made ever so soon after the occurrence, it ought not to be received in evidence, as it is no part of the *res gestae.*    *Corder* v. *Talbott,* 14 W. Va. 277; *Hawker* v. *Railroad,* 15 *Id.* 628.    The proposed evidence was merely the prisoner's story, not on the spot of the transaction, reflecting its truth, but after he had had time to make up the story.    Furthermore, it does not appear what the witness would give in evidence as to how the shooting took place.    What did Woodrow say to him as to how it took place?    It does not appear.    This is another reason for holding that the rejection of the evidence constitutes no error.    *Sessler* v. *Coal Co.,* 51 W. Va. 318; *Greever* v. *Bank,* 99 Va. 547; *Kay* v. *Glade,* 47 W. Va. 468.

The defendant excepted to the refusal of an instruction saying that the jury could find a verdict of not guilty, or of involuntary manslaughter, or of manslaughter, or of murder in the second dhgree, or of murder in the first degree, with a recommendation of confinement in the penitentiary, or of

murder in the first degree. This instruction commenced with a verdict of not guilty. The usual course is to commence with murder in the first degree. Perhaps the court thought that the object was to give undue prominence to the verdict of not guilty. However, we do not see that this fact would render the written instruction objectionable. But the instruction is bad, because it introduced into the case the degree of involuntary manslaughter, when no evidence whatever tended to show involuntary manslaughter. If the prisoner killed the child, the law would presume, that the act was *prima facie* murder in the second degree. Involuntary manslaughter had nothing to do with the case under the evidence. Many cases say that an instruction should not be given when no evidence fits it to the case, for the reason that it introduces before the jury a question not presented by the evidence. It is a wrong to the state, and often results in a defeat of justice. There is nothing in the evidence of this case to show facts entering into the legal definition of involuntary manslaughter.

Therefore, we reverse the judgment, set aside the verdict, and grant a new trial, and remand the case for such new trial.

*Reversed.*

Poffenbarger, Judge, (*dissenting*):

The judgment is reversed because of the admission of the testimony of the wife of the accused on his trial. On the question of its admissibility, I am compelled to differ from the majority of the Court, though I am in perfect accord with all their rulings as to other phases of the case. Therefore, I would affirm the judgment.

By the common law husband and wife were not competent witnesses either for or against each other. This was the general rule. There was an exception to it, first declared in *Lord Audley's Case*, 3 State Trials, 402; *Rex* v. *Aryre*, 1 Str. 633; *Lady Lawley's Case*, B. M. P. 287; *Rex* v. *Mead*, Burr. 542; *Rex* v. *Bowes*, 1 T. R. 698; *Jagger's Case*, East's P. C. 454; *Rex* v. *Woodcock*, Leach C. C. L. 463. The existence of this exception to the general rule of the common law is generally admitted by the courts of this country. *People* v. *Green*, 1 Denio 614; *State* v. *Hussey*, Besbee (N. C.) 123; *Whipp* v. *State*, 34 O. St. 87; *State* v. *Davis*, 3 Brev. 3;

*Goodwin* v. *State*, 114 Wis. 318; *Davis* v. *Commonwealth*, 99 Va. 838. In the case last cited, the rule is stated as follows: "At common law the wife was a competent witness to testify against her husband in relation to offenses alleged to have been committed by him upon her." Starkie on Evidence, Vol. II (Part 1) 554, says: "The wife is a witness *ex necessitate*, on a charge against her husband of violence committed on her person; so the dying declarations of the wife against her husband are admissible in the case of murder." For the state, it is insisted that, under this exception to the common law rule, the evidence of the wife is admissible under the circumstances of this case.

Before entering upon an inquiry as to this, it is necessary to determine a preliminary question, namely, whether this exception exists in the law of this state. It does unless taken away by some statutory provision. Section 19 of chapter 152 of the Code is the only provision which seems to have any bearing upon the question. It reads as follows: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, at his or her own request (but not otherwise) be a competent witness on such trial and examination. The wife or husband of the accused shall also, at the request of the accused, but not otherwise, be a competent witness on such trial and examination. But a failure to make such request shall not create any presumption against him or her, nor shall any reference be made to nor comment upon such failure by any one during the progress of the trial in the hearing of the jury."

The meaning of this statute is plain. It was intended to modify the common law in respect to two rules entirely different from the one now under consideration. By that law, the accused person was not permitted to testify at all. No matter what his condition in life, his mouth was closed as regarded testimony. He was only permitted to address to the court a statement, unsworn, and without the aid of counsel. *State* v. *Taylor*, 57 W. Va. 228; Cooley's Cons. Lim. 442–449. The primary object of this statute was to enable the witness to testify in his own behalf, but, in doing so, the legislature took care not to violate that provision of the Constitution which denies to any court power to compel a person charged with crime to testify against himself. To this end, the court

is required to allow such testimony only upon the request of the prisoner.    To make this emphatic and plain, the legislature said he should, at his own request, but not otherwise, be admitted as a competent witness.    Then the privilege was further extended so as to permit the wife of the accused, at his request, but not otherwise, to become a witness.    This part of the statute relates to the general rule of the common law which prohibited the wife from testifying for or against the husband.    It is an enabling statute, passed for the purpose of modifying two common law rules; first, the one which prevents an accused person from testifying in his own behalf; and second, the one which forbids the husband or wife of the accused from testifying on his trial.    Confessedly its object and purpose is to remove and destroy restrictions upon the competency of witnesses, not to add to them in any respect. This has been the policy and evolutionary tendency of the law of evidence and of all legislation on the subject.    Incompetency by reason of interest has been almost wholly done away with by statute.    In most of the states of the Union the accused is now permitted to testify upon his trial and to have the benefit of the testimony of his spouse.    Prior to the enactment of this statute in 1881, the accused was required to remain dumb while the evidence of the state was detailed against him.    By the act passed in that year (Acts 1881 ch. 29) the privilege of testifying was extended to him, if he should request it and that act contained the cautionary phrase "but not otherwise."    Plainly this did not extend beyond the rule which disqualified the accused from testifying.    No reference to his testimony on the trial of his wife, or to her testimony on his trial, is found in that act.    There is no peg here upon which anybody can hang the contention that the words "but not otherwise" signify legislative intent to prevent the husband and wife from testifying against each other when, by the common law, they are entitled to do so ; for there is no reference to the husband or wife.    It applies to the accused alone, but the double phrase "at his own request, but not otherwise," was used nevertheless, just as it appears now in section 19 of chapter 152.    What possible reason could have existed for adding the words "but not otherwise" in that statute?    Plainly nothing more than emphasis.    The title of the act "to make persons charged with crime compe-

tent witnesses in their own behalf" shows that it was. By the
act of 1882, chapter 151, the substance of the act of 1881 was
re-enacted into section 19 of chapter 152 of the Code by way
of amendment, and an addition was made to it, allowing the
wife or husband, at the request of the accused, but not other-
wise, to be a competent witness on such trial. As it is per-
fectly plain that the words "but not otherwise" were used in
the act of 1881 merely for emphasis, it is reasonably to be
presumed that they have no other signification in the act of
1882. It simply follows the language of the previous act.
That phrase received legislative construction before it was in-
serted in the act of 1882, and, therefore, under the rule that
all acts *in pari pateria* are to be considered together, in as-
certaining the legislative intent, it is clear that the purpose
was merely to affect the two common law rules of evidence to
which reference has been made. The competency of such
witnesses is made to depend upon the request of the accused.
This implies intent only to make them competent when their
testimony is desired by the accused but not admissible, and
to alter the common law rules in so far only as they denied
to the accused the benefit of such testimony when he might
desire it. It cannot be supposed that the legislature contem-
·plated any such desire when the crime charged has been per-
petrated upon the husband or wife of the accused. Cases of
this class were governed by a rule different from the two
rules which precluded such testimony when desired by the
accused. It is termed by the courts and text-writers an ex-
ception to the general rule, but, in itself, it is a rule applica-
ble to a special case and legislation which is plainly applica-
ble to other rules and designed to modify them ought not to
be extended to this one by mere inference. Statutes which
are in derogation of the common law are to be strictly con-
strued. Moreover, it is well settled that in construing a stat-
ute, the court must keep in view the evil which the legisla-
ture sought to remedy. What that evil· was in this instance
is plainly apparent from the language used. By this process
of reasoning, I reach the conclusion that this statute works
no change in the common law exception which permits the
wife and husband to testify against each other on criminal
trials for offenses by one against the other.

Whether the exception is broad enough to make the wife

a competent witness against the husband under the circumstances of this case, involves a consideration of the reason or principle upon which that exception stands. All the authorities say it arises *ex recessitate rei.* What sort of necessity is its basis? In *Bently* v. *Cook,* 3 Doug. 422, Lord Mansfield said: "That necesity is not a general necessity, as where no other witness can be had, but a particular necessity, as where for instance the wife would otherwise be exposed without remedy to personal injury." In *Soule's Case,* 5 Greenl. 407, Mellen, C. J., said: "From the general rule some exceptions have been established, founded on the necessity of the case. For instance, if a wife could not be admitted to testify against the husband as to threatened or executed violence and abuse upon her person, he could play the tyrant and brute at his pleasure, and with perfect security beat, wound, and torture her at times and in places when and where no witnesses could be present nor assistance be obtained." Wigmore on Evidence, section 2239, says: "That was commonly placed on the ground of necessity,—that is, a necessity to avoid that extreme injustice to the excluded spouse which would ensue upon an undeviating enforcement of the rule." In *Rex v. Wakefield,* 2 Lew. Cr. C. 1, 20, 279, Hullock, B., said: "A wife is competent against her husband in all cases affecting her liberty and person; * * * it would be unreasonable to exclude the only person capable of giving evidence in certain cases of injury. Our law recognizes witnesses *ex necessitate,* and it would be strange indeed that the husband should be allowed to exercise every atrocity against the wife and her evidence not be admitted."

The nature of the necessity being thus disclosed, is it applicable to the case of a wrong done by either spouse to an infant child? Plainly it appears that this necessity grows out of the privacy and seclusion in which such wrongs may be perpetrated. The husband is master of his home. The law terms it his castle. From it he may exclude all except members of his family. There he has the right to require the presence and continuance of his wife and children. In the secret recesses of his mansion they are bound by duty to stay. Against his will they are not entitled to have others present. He is entitled to the custody and control of his children. He may make them utterly dependent upon him

for their support, by denying to strangers the right to give them employment and to receive them within their doors. His right to their custody is admitted to be superior to that of the mother, even when the parents are living separately from each other. Is it possible that the law will not permit the wife to reveal the brutality and inhumanity of the husband to children of such tender years as to make them incompetent as witnesses? If she cannot, what remedy is there in the law for their protection? If it is not a wrong against her, conceding that it is necessary to bring the act within the definition of a legal wrong against her, then it does not justify her separation from him, and she is compelled either to remain silent and submit to it, or forfeit her right to the support of her husband and to any share in his estate. For a wrong cruelly perpetrated upon her she may, under our law, depart from her lord's castle without forfeiting her right to dower or her distributive share in his estate, but if she cannot do so for cruelty to her infant child without making such sacrifice, it seems to me that the necessity is even greater than in the case of direct cruelty to herself, as by beating, wounding and maltreating. If it does justify separation, then it must be, in law, a wrong done to her, and, therefore, strictly within the exception. To say it is not an injury and a wrong to her is to set at defiance the laws of nature. The lowest orders of the animal kingdom will not only protect their young, but will, as a rule, sacrifice life itself for their safety. Men and women, who have the true natural instincts, and in whom the parental affection is normal, undepraved and unrestrained by viciousness, will make any sacrifice, even that of their personal safety and lives, for the protection of their children. No sacrifice can be greater than that of the child. In subjecting Abraham to the final and highest test of his faith, God required him to offer up his son; and the highest ideal of sacrifice is embodied in the scriptural declaration: "God so loved the word that he gave his only begotten Son," etc.

Any interpretation of the common law which ignores natural rights is not to be entertained; for its object is the vindication of such rights. The general rule to which exception has been made is not predicated upon any natural, inalienable right, but merely upon public policy, and to say that public

policy will, in any event, be carried to the extent of destroying a natural right, or falls short of the protection of such rights, is to carry it beyond reason. That the general rule disqualifying the husband and wife from testifying for or against each other does rest upon considerations of public policy, is not open to question. All the decisions are to this effect. In *Soule's Case*, cited, Mellen, C. J., said: "Reasons of public policy do not certainly extend so far in such cases as to disqualify her from being a witness against him." Lord Hardwicke said, in *Barker* v. *Dixie*, Temp. Hardw. 264, "The reason why the law will not suffer a wife to be a witness for or against her husband is to preserve the peace of families." Lord Kenyon said, in *Davis* v. *Dinwoody*, 4 T. R. 678: "Their being so nearly connected, they are supposed to have such a bias on their minds that they are not to be permitted to give evidence either for or against each other." Irvin, J., in *Mills* v. *U. S.*, 1 Pinney 73, 75, said: "But suffer or compel him to testify, and indelible disgrace may be fixed upon his family and he be made the subject of the deepest mortification which a sensative being can endure. * * * Is a policy so fraught with mischief to those delicate relations of society to be established? Surely not." "The reason for the exclusion of husband and wife when called for or against each other being social policy and not interest, statutes abolishing incompetency resting on interest do not remove the common law incompetency of husband and wife for or against each other." Whar. Cr. Ev., section 400. If we were to examine all the cases on the subject, nothing better or more forcible than reasons of public policy could be found for the general rule, disqualifying husband and wife from testifying. Some judges have said it is due to their unity. Grant it, and yet we have but a fiction rendered necessary for the working out of certain rights artificially created by the law. Are the natural, inalienable rights of life and liberty to be sacrificed or subordinated to mere reasons of public policy? If we say that disqualification goes so far as to prevent the wife from testifying against the husband concerning a wrong done to a helpless child, to whose voice the courts will not, and cannot, listen, we must say that reasons of public policy shall be paramount to natural right.

The rules and principles governing society and the marital

relation, as well as the law of nature, demand that parents
have the custody of the persons of their children. No law
can alter this without subverting the family relation which
lies at the basis of all society. No law can clothe a child of
extremely tender age with the power to testify, with any de-
gree of certainty, as to the nature and extent of injury in-
flicted upon it. Hence, if husband and wife are not permit-
ted to testify against each other as to offenses against such
children, the law affords no adequate protection to their lives
and liberty. If, therefore, it be conceded that an injury to
such a child is not a wrong to the person or liberty of the
mother or father, the principle of necessity affords indepen-
dent ground for the admission of the testimony of either
husband or wife against the other in respect thereto. The
object of the law is to protect life, liberty and property and
encourage the pursuit of happiness. The family relation, its
sanctity and inviolability are necessary to the existence and
perfection of society, and the law will not permit invasions
of its sanctity nor disturbance or breach of its confidential
relations, upon consideration of mere convenience, or in re-
spect to light and trivial matters, but human life, liberty and
immunity from great bodily injury are matters of such mo-
ment that the remedies afforded by the law must be adequate
for the vindication of the right thereto under all circum-
stances. It must create no places in which wounding and
murder may be perpetrated with impunity and without fear
or possibility of detection and punishment. Husband and
wife will not be dragged forth to testify against each other
as to offenses against strangers, and divulge matters commu-
nicated in confidence, and take action calculated to engender
hatred between them and produce discord and dissensions,
subversive of the family relation. Their own happiness and
the necessity of maintaining that relation for the benefit of
society in general as well as the protection of the helpless
offspring of the union forbid this, because the public right
against the offender may ordinarily be vindicated without it.
But when the blood of husband, wife or helpless child is
found on the door of the home, and wounds on the body of
such member of the family, the law must invade that home
and permit the truth to be disclosed, else the enemy of the
home and all society and violator of all laws, human and

divine, must go unwhipped of justice. The law of necessity
alters the general rule of competency under such circum-
stances. This is the force and effect of the common law de-
cisions which permit the husband and wife to testify against
each other on charges affecting their persons and liberty.
They declare a principle of the common law, and the reason
for the application of that principle here is imperious.

The courts of this country seem to hold that nothing short
of personal violence to the husband or wife will make one a
competent witness against the other, under the common law
exception. *Brock* v. *State*, 44 Tex. Cr. Rep. 335, 100 Am.
St. 859; *Compton* v. *State*, 44 Am. Rep. 703; *People* v.
*Shoonmaker*, 117 Mich. 190; *State* v. *Frey*, 76 Minn. 526;
*Crawford* v. *State*, 98 Wis. 623; *Shelden* v. *State*, 74 Wis.
271; *State* v. *Evans*, 138 Mo. 116; *People* v. *Curiale*, 137
Cal. 534; *Stein* v. *Bowman*, 13 Pet. (U. S.) 223; *Bassett* v.
*United States*, 137 U. S. 496. In none of these cases, how-
ever, did the necessity of admitting the testimony appear.
Some were charges of rape, perpetrated on the wife before
marriage and when she was not the wife. Others were charges
of bigamy, which the court said were not offenses against the
wife, but against the marital relation. One was for incest com-
mitted with the daughter of the wife, step-daughter of the
accused. None of these cases, in the facts presented, come up to
the exigency of this one. In each of them, there was, or ought
to have been, some competent witness, without calling the
wife, and we need consume no time in testing their sound-
ness. But it may be said, without fear of successful contra-
diction, that the courts, in all those cases, made a broader
declaration against the scope of the exception than was justi-
fied by the facts disclosed and issues made, and, in that dec-
laration, disregarded the principle of the exception and took
only the precedents which had arisen under it for their guid-
ance. A case relied upon by the Attorney General to sus-
tain the competency of this evidence is *Clark* v. *State*, 117
Ala. 1, admitting the wife as a witness against her husband
to prove him guilty of having murdered their child by beat-
ing her while *enciente* so that the child, though born alive,
afterwards died, in consequence of injuries inflicted upon the
mother. The exact ground upon which the evidence was
admitted, is debatable, since the court seems to have based

its conclusion both on the ground of necessity independently of any wrong done to the wife, and personal violence to her. The language is as follows: "Whenever the element of personal violence is a necessary constituent of the offense, every reason exists, upon which the exception rested originally, and for the sake of public justice, the wife should be admitted as a witness."

Having thus considered the circumstances and the principles of law relating to them, I am firmly convinced (1) that the killing or wounding of a child, too young to protect itself by its testimony, is, in law, a wrong to the parent, affecting the person and liberty, and so making the parent a competent witness against the other spouse on his trial for the crime; and (2) that, independently of any wrong to the parent, he or she is a competent witness against his or her wife or husband, as the case may be, on trial for the offense, *ex necessitate rei.*

SANDERS, JUDGE, (*dissenting*) :

I do not agree that the evidence of the wife is incompetent, and, therefore, concur in the dissenting opinion of JUDGE POFFENBARGER. I think the case entirely free from error, and would affirm the judgment.