# CHARLESTON.

STATE *v.* WILLIAM DOTSON.

Submitted April 29, 1924.    Decided June 6, 1924.

1. HOMICIDE—*Dying Declaration Signed by Mark Inadmissible Without Proof That Declarant Had Knowledge of and Approved Contents.*

    A ·dying declaration in the form of a written statement purporting to be signed by mark should not be admitted in evidence without proof that the declarant had knowledge of and approved its contents. (p. 598).

2. SAME—*Admission of Dying Declaration Without Proof That Declarant in Articulo Mortis and Conscious of Impending Death Improper.*

It is improper to admit a dying declaration in evidence without proof before the jury that the declarant at the time of making the statement was *in articulo mortis* and conscious of impending death. (p. 598).

Appeal from Circuit Court, Brooke County.

William Dotson was convicted of murder in the first degree, and he appeals.

*Reversed and remanded.*

W. M. Werkman and Erskine, Palmer & Curl, for plaintiff in error.

E. T. England, Attorney General, and R. A. Blessing, Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, William Dotson, was convicted in the circuit court of Brooke County of murder in the first degree upon an indictment charging him with the murder of one, John Jones. The case comes here on writ of error to the judgment of the trial court imposing the death penalty.

William Dotson, defendant, and John Jones, deceased, lived in adjoining houses at Collier in said county, where they had been working in coal mines for four years. They were intimate friends and had worked on the same coal cutting machine for about a year before the homicide. Sometime after dark on the evening of Saturday, April 28th, 1923, Jones started into Dotson's house. Dotson smelled whisky as Jones passed him in the doorway, and asked Jones what he had been drinking, remarking that he would "like to have some of it", whereupon Jones offered to get some whiskey, Dotson agreeing to pay for his share. Jones immediately went off and returned in about twenty-five minutes with a pint of "moonshine" liquor which he and Dotson drank. Jones then left and in a few minutes returned with another pint, most of which they proceeded to drink. The two consumed about two pints of moonshine in little more than a half hour. Another man named Harris, and his wife,

had been in the house, but Harris partook of only a small quantity of the liquor. Harris left about the time that his wife and Dotson's wife went to a mail box. On the return of Dotson's wife after an absence of about half an hour, she and Dotson got into an argument over some mail which she had just gotten, about which he enquired. A tussle ensued over a revolver, containing three loads, which Dotson had been looking at before he started drinking. He says he does not remember how he happened to have the gun out, but it was sticking in his belt when his wife returned. During the scuffle with his wife one load was discharged. At this juncture Jones entered the scrimmage with the result that the two remaining loads were discharged, striking Jones, who was shortly taken to a hospital in Steubenville, Ohio, where he died several days later. Dotson would excuse his act on the ground that he was drunk and had no intention of firing the shots, but his memory appears definite as to numerous details of the struggle. He also denies making statements, testified to by several witnesses, on various occasions shortly after the shooting to the effect that he was glad he had shot Jones because Jones had been too familiar with his wife. Evidence was introduced tending to show the previous good character of accused.

The trial court admitted in evidence over defendant's objection the purported dying declaration of the deceased in the form of a written statement, to the effect that he and defendant had always been friends and that at the time of the tragedy after drinking some moonshine liquor with defendant, the latter engaged in a quarrel with his wife, seizing and threatening to kill her; and that when he attempted to interfere and prevent him from shooting his wife, Dotson turned the pistol he had drawn from his belt and discharged at her, on deceased and fired twice. The defendant assigns error in the admission of this statement. The court took evidence in the absence of the jury tending to show that the deceased at or near the time of making the purported statement was in articulo mortis and conscious of impending death, none of which evidence was offered to the jury. Defendant contends that although the court must determine the

admissibility of such declaration, and may hear evidence thereon in the absence of the jury, nevertheless after the preliminary investigation, if it is decided that such declaration is admissible, the evidence upon which its admissibility is determined must go to the jury, it being the province of the jury to decide whether or not the statement was made *in extremis* and without hope of recovery, and to give it the weight to which in their opinion it is entitled. The statement was introduced before the jury with the bare answer of a witness that, ''This is a statement made by John Jones on the 30th day of April, 1923, in the hospital at Steubenville''.

The same facts which were considered by the court in passing upon the admissibilty of the declaration must of necessity be considered by the jury in deciding upon its credibility. Hence when the court, having examined the question in the absence of the jury, decides in favor of the admissibility of the declaration, the preliminary proof should then be submitted to the jury to enable them advisedly, and from all the lights which the facts and circumstances afford, to determine upon the credibility, weight, and force of the evidence. Am. & Eng. Enc. of Law, Vol. 10, 2d Ed., p. 387; 30 C. J., p. 268, sec. 507; 3 Wigmore on Evidence, 2d Ed., sec. 1451; *Martin* v. *State,* 9 Ohio Cir. Dec., p. 621; *State* v. *Long,* 88 W. Va. 669, 689; *State* v. *Clark.* 64 W. Va. 625, 630.

Furthermore the statement purports to have been signed by mark in the presence of Helen V. Kemp, (the witness introducing it), and another, not a witness at the trial, from which it is apparent that Jones was unable to write at that time. The statement, as appears from the language used, is not in the words of the declarant. Declarations not the language of the deceased must be read and assented to by him. Michie on Homicide, p. 1065; *State* v. *Elliott,* 45 Iowa, 486. There is no evidence showing that Jones read the statement, or knew and approved its contents. In the absence of such facts the statement would not be admissible. ''A written declaration may be received in evidence where it was approved by the declarant after reading it or hearing it read by another and is shown by a competent witness who was

present at the time to be the identical statement so made
and approved.'' 30 C. J., p. 259, sec. 501; *State* v. *Clark,
supra;* Wigmore on Evidence, Vol. 3, 2d. Ed., sec. 1450.

An alleged prior statement of defendant was admitted for
the purpose of contradicting his testimony. It is charged
that the law partner of the prosecuting attorney took this
statement by having the defendant brought out of jail into
the sheriff's office, sworn and compelled to make answer; and
for that reason the use of the statement was improper under
Section 20, Chapter 152, Code, providing that in a criminal
prosecution other than for perjury evidence shall not be
given against the accused of any statement made by him as
a witness upon a *legal examination.* But such interview of
the defendant, being without authorized form of law, was in
no sense a legal examination in contemplation of the statute.
*State ex rel Lively* v. *Strother, Judge,* 89 W. Va., 352. The
statement is inadmissible, if at all, on the ground that it con-
stitutes a confession and was introduced without laying the
proper foundation. It is not offered in full, nor is there
evidence showing that the attorney who secured it bore any
special relation to the prosecuting attorney, or to any other
officer.

The defendant also complains of the trial court's action in
overruling his motion to quash the indictment on the ground
that it shows Beatrice Dotson, the wife of the accused, as
one of the two witnesses appearing before the grand jury
upon whose testimony it was found. Assuming that the
testimony of the wife given before the grand jury was il-
legal, this would not be sufficient reason for quashing the
indictment. It is generally conceded that the mere fact
that some illegal or improper evidence has been received
before the grand jury or that certain witnesses examined
were disqualified to testify, will not invalidate an indictment
where other legal evidence was received in its support. *State*
v. *Clark,* 64 W. Va. 625, 63 S. E. 402; 22 Cyc. 206; *State* v.
*Woodrow,* 58 W. Va. 532. We might suggest, however, in
this connection that the indictment disclosing the name of the
wife as one of the witnesses upon whose testimony it was
returned should not be given to the trial jury.

We find no error upon the other questions presented and, of course, cannot consider any which might have been raised by objections to the State's instructions or otherwise.

The judgment of the circuit court is reversed, verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*