# CHARLESTON

## STATE v. COOPER.

Submitted June 3, 1914.    Decided June 16, 1914.

1.  JURY—*Disqualification of Juror—Grand Jury.*
    One who served on the grand jury which returned an indictment is disqualified for service as a petit juror on the trial of a person thereby accused. (p. 474).

2.  SAME—*Disqualification—Substitution of Juror.*
    Though by the court deemed qualified upon *voir dire* and sworn as such juror, he not then recalling such former service, it was not error to excuse him from the panel of twelve, and in his stead to sub-

stitute another who upon examination was ascertained to be free from disqualification.  (p. 474).

3.  Same—*Challenge for Cause—Objection to Withdrawal of Juror.*
    A mere objection to the withdrawal of a disqualified juror and the substitution of another upon due examination adjudged free from objection, is not a challenge for cause.  (p. 474).                    ·

4.  Same—*Objection to Juror—Waiver.*
    One accused of a felony waives his right of challenge, and will not, after verdict, be heard to complain, if, with knowledge of the disqualification, he remains silent or refuses, when afforded an opportunity, to exercise his right thereto.  (p. 474).                    ·

5.  Criminal Law—*Harmless Error—Argument of Counsel.*
    Remarks of counsel in argument, which, when objected to, the court instructs the jury to disregard, is not cause for reversal of a judgment on a verdict otherwise free from error.  (p. 478).

6.  Same—*Homicide—Instructions—Evidence.*
    A case in which rulings on instructions held not erroneous.  (p. 476).

    (Poffenbarger and Robinson, Judges, dissenting.)

Error to Circuit Court, Fayette County.

John Cooper was convicted in a homicide case, and brings error.

                                                        *Affirmed.*

*Osenton & Horan,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

Lynch, Judge:

John Cooper was convicted upon an indictment in the form prescribed by statute, charging him with the killing of Rufus Clendenin on September 4, 1912.  The specific assignments of error on which he relies for reversal are the rulings of the trial court upon his demurrer to the indictment, the empaneling of the jury, the admission and rejection of evidence, the giving of instructions 1 and 4 for the state, and the refusal of his instruction number 5.  Having heretofore held sufficient indictments charging murder in the statutory form, the citation of authority alone suffices.  *State* v. *Schnelle,* 24 W. Va. 767; *State* v. *Flanagan,* 26 W. Va. 118; *State* v. *Baker,* 33 W. Va. 330; *State* v. *Sheppard,* 49 W. Va. 592.

Upon the panel first selected, in the manner required by §3, Ch. 159, Code 1913, and sworn to try the case, were two jurors, Meadows and Harrah, who had served as members of the grand jury which returned the indictment. This previous service they did not recall when examined upon their *voir dire;* but did so recall, and advised the court thereof, before any evidence was introduced by the state. The presence of the witnesses, when convened at the clerk's desk to be sworn, reminded them that they had been members of the grand jury. Thereupon the court, over defendant's objection, excused the two jurors, and defendant excepted. That those who served as grand jurors on the finding of an indictment are incompetent as petit jurors on the trial of the offense charged, appears from *State* v. *McDonald,* 9 W. Va. 456; *Dilworth* v. *Com.,* 12 Gratt. 689, 65 Am. Dec. 264; *Bristow* v. *Com.,* 15 Gratt. 634. To Hoffer, one of the jurors called and examined as substitutes for the two excused, the state objected, because he was one of the original panel of twenty from which the first twelve were selected; but the court sustained defendant's objection to excusing Hoffer, and substituted him in lieu of one of the two thus excused. However, neither the state nor the accused objected to Bragg, the other substituted juror, when, as thus completed, the panel of twelve was again sworn to try the case. To the court's inquiry, through the prosecuting attorney, whether defendant objected to the jurors Bragg and Hoffer, he, at the instance of his counsel, remained silent, and did not challenge or object to either of them; though, without assigning any cause therefor, he did later enter an objection to the discharge of Meadows and Harrah and to the substitution of Bragg and Hoffer, and excepted to both rulings of the court thereon.

Was the court's action in thus excusing two disqualified, and substituting therefor two apparently qualified jurors, erroneous, in view of defendant's refusal to exercise his right of challenge when thus in effect tendered to him? That he had the right to challenge for cause either one or both of the jurors Bragg and Hoffer is conceded—a right he could exercise or decline, as advised by counsel. But when he failed to act, when afforded an opportunity, he can not thereafter be heard to complain. By failing to challenge when request-

ed, he waived his right thereto. A mere general objection to the action of the court does not constitute a challenge for cause. Should one accused of felony decline to participate in the selection of a jury to try his case, the prosecuting attorney is authorized to strike eight from the panel of twenty jurors whom the court may adjudge to be qualified, and of this action defendant can not complain. §3, Ch. 159, Code 1913. Besides, there is always a presumption of regularity in all judicial proceedings. Error must be shown by him who asserts irregularity. *Scott* v. *Newell,* 69 W. Va. 118; *State* v. *Lavin,* 64 W. Va. 26; *State* v. *Ice,* 34 W. Va. 244; 24 Cyc. 299, 255; 2 Bish. Crim. Proc. §749. Here, defendant made no attempt to show in what respect, if any, he was prejudiced in the selection of the jury; and we see no error therein. §7, Ch. 159, Code 1913; *State* v. *Davis,* 31 W. Va. 390; *State* v. *Williams,* 49 W. Va. 220. See also *Thompson* v. *Douglass,* 35 W. Va. 337.

The evidence admitted over defendant's objection was not prejudicial or improper; and, if it was competent where refused, he failed to indicate, except as to one question, the answer anticipated. In that instance, however, the fact sought to be elicited was sufficiently disclosed by answers to preceding inquiries. Cooper and Clendenin had quarreled about a trifling matter some time between one and three o'clock in the afternoon of the day of the homicide, which occurred about six o'clock in the evening. Immediately after the quarrel, each of them secured a revolver, Clendenin walking to his home, half a mile distant, for the purpose, saying, when separating from Cooper, he was too drunk to fight but would get his gun and "settle" with him. Cooper, when asked when he got his pistol said just after Clendenin went home; and, to a question why he got it, replied, "to protect my own self". Then followed the further question, objection to which the court sustained: "Did you in good faith believe Clendenin was going home to get the pistol and come back and settle with you"? The answer anticipated, as appears from the record, was that "owing to his knowledge of the general reputation of Clendenin for being a bad and dangerous man, together with his threat that he was going home to get a gun and come back and kill him or do him great bodily harm,

Cooper got this gun *to protect himself in case he came back*". But, as noted, defendant had testified to his purpose in obtaining possession of a revolver, and repetition thereof was therefore unnecessary. The charge against Cooper was not that of carrying a revolver, but that he later used it in an assault upon Clendenin, resulting in the instant killing of the latter.

Before determination of the propriety of the instructions of which defendant complains, a further review of the testimony is deemed essential. As stated, defendant and Clendenin had quarreled at least three hours before the homicide, and each of them immediately thereafter secured a revolver. Afterwards and until Clendenin was killed, both he and Cooper remained in close proximity to each other, perhaps neither of them seeing the other in the meantime. Soon after Clendenin's return from his home, he quarreled with William Parker about an equally trifling matter, in a saloon from which both were ejected; and, until Clendenin was shot, he and others, including Parker, remained in front of the saloon, engaged in a conversation, the subject of which those present were unable to state. At least none of them except McIntyre could or did repeat anything said by Clendenin indicative of a hostile attitude on his part against Cooper or any other person then present. But, while thus engaged, Cooper, with a revolver in his right hand, according to the testimony of all of the several witnesses introduced by the state, hurriedly approached Clendenin, unobserved by the latter until within a few feet of him, when Cooper shot, killing Clendenin almost instantly. It is true that, while these witnesses say Cooper walked out of the front door of the saloon and thus in haste approached and shot Clendenin, Cooper and Aquino testified he did not come out of the saloon, but out of a butcher shop the door of which was within a few feet of the front door of the saloon. Cooper and McIntyre say when Clendenin saw Cooper approaching, Clendenin remarked that he was too drung to fight but that if he "had to kill a damn son of a bitch he guessed he could do it", and "just started out of his pocket with his gun, and turned toward me (Cooper) that way (illustrating)". However, excepting defendant and Mc Intyre, all the witnessess say that none of them, including Clendenin, saw Cooper approaching until he was within a few

feet of Clendenin; that then Cooper was in the attitude of one about to shoot, and did immediately shoot, before Clendenin succeeded in drawing his revolver, which dropped either from his hand as he was in the act of drawing it from his pocket, or from his pocket as he fell to the ground.

The two instructions complained of informed the jury that if they believed the evidence on the part of the state thus detailed they should find defendant guilty of murder in the first degree. Instruction number 1 was based upon the theory that Cooper, armed with a deadly weapon, found the deceased, and feloniously and intentionally shot and killed him, "as charged in the indictment", and the fourth, that, if, being thus armed, he walked up to or sought out Clendenin with the intention of having an affray with him or for the purpose of killing him, and a difficulty ensued, he could not, without some proof of a voluntary change of conduct or action on his part, excuse the killing of Clendenin upon the ground of self defense, "upon the principle that one can not knowingly and wrongfully bring upon himself the very necessity which he sets up for his own defense". In view of the evidence, we can not say either of these instructions was erroneous.

Instruction number 5, refused, seems to us to be clearly covered by other instructions given at defendant's request. Number 4 told the jury that if they believed from "a preponderance of all the evidence and circumstances in this case that the deceased attacked the defendant, in such a manner and under such circumstances as to furnish him reasonable grounds to believe and he did believe he was in danger of death or great bodily harm at the hands of the deceased, and that under the influences of such belief he fired the shot that killed the deceased in order to protect himself from death or great bodily harm, such killing would be excusable under the laws of this state and the defendant guilty of no crime". This instruction clearly placed before the jury the theory relied on by defendant to excuse the homicide. Instruction number 5 was substantially on the same theory, though in a somewhat amplified form. But it is not erroneous to refuse an instruction which merely repeats other instructions given at the instance of the same party. It seems to us clear that

the instructions given for the state and for defendant properly placed before the jury all the theories relied on by each of them, and that defendant was not prejudiced by the action of the court thereon. *State* v. *May,* 62 W. Va. 129; *Snedeker* v. *Rulong,* 69 W. Va. 223.

The court did not err in refusing to grant a new trial. The testimony fully warranted the verdict. The jury could reasonably and properly conclude that Cooper was the aggressor, and that Clendenin did not see him as he approached, and not until Cooper was in the attitude of one intending to make a murderous assault.

Some complaint is also made of certain remarks by counsel in argument on behalf of the state. The record shows an objection on behalf of defendant made at the time of the utterance, but that thereupon the court promptly directed the jury to disregard the argument of counsel except in so far as it was based upon the evidence. Of course, some lattitude must necessarily be allowed counsel in the discussion of any case; and this court will interfere only where the party complaining promptly objected; and requested the court to instruct the jury to disregard the argument, and not then unless such remarks reasonably appear to be prejudicial to the complaining party. *State* v. *Shores,* 31 W. Va. 491; *State* v. *Shawn,* 40 W. Va. 1; *State* v. *Allen,* 45 W. Va. 65; *State* v. *Clifford,* 58 W. Va. 681.

Nor can we say the question propounded to defendant on cross-examination, whether he had not previously carried a revolver, was prejudicial to him. Whether he did or did not was immaterial on the trial of the issues involved. But, he having answered in the negative, we are unable to say in what respect he was injured thereby; especially as he had offered in evidence proof tending to show his previous good character as a quiet and peaceable citizen in the community wherein he was known. In rebuttal thereof, the state could, by proper evidence, attempt to show the contrary. *State* v. *Lane,* 44 W. Va. 730; *Price* v. *Com.,* 21 Gratt. 868. Under the circumstances, this objection seems untenable.

We are of opinion, therefore, to affirm the judgment.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting)*:

The prisoner's legal right of peremptory challenge having been curtailed and restricted in the selection of the jury, by the elimination of two of the twelve first selected and the substitution of two others, I am unable to concur in the decision. These two were not among the twenty, when he exercised his right to strike off six. If they had been, his striking might have been entirely different. In my opinion, when the two disqualified jurors were removed, the panel should have been filled again to twenty, and the prisoner permitted to strike over again. It is said he was accorded his privilege of peremptory challenge and declined to exercise it as to the two new jurors. He certainly did not have it accorded to him in the manner contemplated and required by the statute. What was offered him may have been just as good, and it may be possible to devise even a better scheme than the statutory one, but I do not think the courts have any power to substitute schemes and devices of their own for those ordained by the legislature.

Whether the prisoner was injured in a practical sense by this denial of legal right, it is impossible to say. It is equally impossible to see that he was not. and a presumption of injury arises from error in a trial.

Judge ROBINSON concurs in this note and also dissents from the decision.