378 S.E.2d 449

STATE of West Virginia

v.

George BONGALIS.

No. 17971.

Supreme Court of Appeals of West Virginia.

Feb. 17, 1989.

Francis M. Curnutte, III, Madison, for George Bongalis.

Charles G. Brown, Atty. Gen., Charleston, for State.

MILLER, Justice:

The defendant, George Bongalis, appeals his conviction of second degree murder in the Circuit Court of Boone County. He assigns as error: (1) that the evidence shows no malice and, therefore, cannot support a second degree murder conviction; (2) that his self-defense instruction was rejected; and (3) that one member of the jury was a convicted felon. He further assigns several evidentiary errors.

The defendant killed a Mike Hendricks as a result of an altercation with him in front of a bar. The State sought to show that the defendant had a romantic involvement with Ronda Hendricks, who was the ex-wife of the victim and who worked for the defendant at his bar. Sometime prior to the shooting, it is alleged that Ms. Hendricks began to see her ex-husband and this upset the defendant. About eleven days before the homicide, the defendant fired Ms. Hendricks as he believed she was giving free drinks and money to her friends.

On the night of the shooting, Ms. Hendricks, her ex-husband, and Tommy Clay, along with several friends, were drinking at "Gene's," a local bar. The defendant came into the bar with Rick DeBoard and began staring at Ms. Hendricks. She became upset and moved to the bar where she stared at the defendant and began verbally harassing the defendant. This led to the bartender asking her to leave and she, along with her friends, left the bar. There was evidence that in the bar parking lot, Ms. Hendricks' ex-husband, the victim, tried to calm her down and to this end slapped her in the face.

They decided to leave the parking lot and Tommy Clay took Ms. Hendricks in his vehicle. The victim drove Ms. Hendricks' roommate, Teresa, to Ms. Hendricks' house, but Ms. Hendricks was not home. They decided to return to "Gene's." There was testimony that Rick DeBoard's vehicle was seen following the victim's car on the return trip to "Gene's."

As the victim and Teresa arrived at the bar, Tommy Clay and Ms. Hendricks also drove up. While the bar was closed, the two women were let in to purchase a bottle of liquor. The victim stayed in his car and Mr. Clay sat with him. Mr. Clay testified that the victim appeared drunk as he did not respond to his conversation and had his eyes closed. Mr. Clay also testified that he went to the bar to try to get some help to get the victim home, but could not gain entrance. When he walked back to the victim's car, Rick DeBoard was parking his truck behind the car.

Mr. Clay testified that he approached the truck and asked Mr. DeBoard for help. At this point the defendant, who was a passenger in Mr. DeBoard's truck, pulled a gun from underneath the floor mat. He spoke about the trouble that had earlier occurred at his bar. In reference to the victim, the defendant stated, as he got out of the truck, "I believe I'll whip his ass."

Mr. Clay testified that the defendant pointed the gun at his face and told him to get on up the road. Mr. Clay got in his vehicle and, as he drove away, he saw the defendant reaching in the car shaking the victim as if he was trying to wake him.

While these events were occurring, Ms. Hendricks and Teresa were inside "Gene's." The bartender heard two noises that sounded like "backfire." Ms. Hendricks left the bar and saw the victim on the ground with two people standing near him. She stated that she was hysterical and did not recognize them. She ran back into the bar to get help. When she returned, the vehicle behind the victim's car was gone.

A neighbor heard a vehicle rapidly drive away after hearing a shot. The State's forensic expert established that the victim died from two bullet wounds fired from a 9 mm. pistol belonging to the defendant. He also stated that one shot was fired point blank and estimated that the other was fired from two to two and one-half feet away.

The State also introduced the defendant's statement in which he admitted having the gun in his back pocket and engaging in a fight with the victim. It was the defendant's position that during the fight, they both ended up lying on the street. He further contended that the gun was also on the street and that he heard a shot, but did not initially know who was shot.

## I.

■ The defendant claims there was insufficient evidence of malice and, this being an essential element of second degree murder, the verdict must be set aside. There is no disagreement that malice is an essential element of second degree murder, as stated in Syllabus Point 2 of *State v. Clayton*, 166 W.Va. 782, 277 S.E.2d 619 (1981):

"'Malice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter.' Syllabus Point 1, *State v. Galford*, 87 W.Va. 358, 105 S.E. 237 (1920)."

The term "malice" has been described in various ways. For example, in *State v. Starkey*, 161 W.Va. 517, 524, 244 S.E.2d 219, 223–24 (1978), we quoted from our earlier case, *State v. Douglass*, 28 W.Va. 297, 299 (1886), which defines it as "an action flowing from a wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances as carry in them the plain indication of a heart regardless of social duty and fatally bent on mischief."

We were careful in *State v. Morris*, 142 W.Va. 303, 314–15, 95 S.E.2d 401, 408 (1956), to point out:

"This term, it has been said, implies a mind under the sway of reason. It excludes the idea of sudden passion aroused by an unanticipated and unpro-

voked battery inflicted by the assailant without the fault of the person assailed. If in such case the death of the aggressor results, even if intentional, it cannot be traced to a malignant heart but is imputable to human frailty."

Certainly, malice can, as indicated by the Defendant's Instruction No. 16, include "not only anger, hatred and revenge, but other unjustifiable motives.... It may be inferred from any deliberate and cruel act done by the defendant without any reasonable provocation or excuse, however sudden." [1] *See State v. Matney*, 176 W.Va. 667, 346 S.E.2d 818 (1986); *State v. Slonaker*, 167 W.Va. 97, 280 S.E.2d 212 (1981).

■ In this case, we find there was sufficient evidence of malice. The State's evidence demonstrates that shortly prior to the shooting, the defendant exhibited ill-will toward the victim, Mike Hendricks, by stating to his companion, Mr. Clay, "I believe I'll whip his ass." This was done as he got out of the truck to go toward the vehicle where the victim, according to Mr. Clay, was passed out. Mr. Clay was forced to leave the scene by the defendant threatening him with his gun. Before he left, however, Mr. Clay saw the victim being shaken by the defendant. It is clear from the State's evidence that the defendant was the aggressor. The jury could easily conclude that he returned to the vicinity of the bar with the purpose of finding the victim.

■ Although the defendant argued that there was a fight and the gun went off accidentally, the medical and other expert testimony contradict this conclusion. The victim died after having been shot twice.[2] Given the State's case and the weight accorded to it on appeal, as set out in Syllabus Point 1 of *Starkey, supra*, we find that the jury verdict of second degree murder must stand:

> "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." [3]

### III.

■ Another assignment of error is that the trial court refused the defendant's instruction on self-defense. This was based on the trial court's conclusion that the evidence did not warrant such an instruction, as there was nothing to show that the victim was about to inflict death or serious bodily harm to the defendant. This fact is critical to a self-defense claim, as we have

---

1. Defendant's Instruction No. 16, which we approve, in its entirety provided:

    "The word malice, as used in these instructions, is used in a technical sense. It may be either express or implied and it includes not only anger, hatred and revenge, but other unjustifiable motives. It may be inferred or implied by you from all of the evidence in this case if you find such inference is reasonable from facts and circumstances in this case which have been proven to your satisfaction beyond all reasonable doubt. It may be inferred from any deliberate and cruel act done by the defendant without any reasonable provocation or excuse, however sudden. Malice is not confined to ill-will toward any one or more particular persons, but malice is every evil design in general; and by it is meant that the fact has been attended by such circumstances as are ordinarily symptoms of a wicked, depraved and malignant spirit, and carry with them the plain indications of a heart, regardless of social duty, and fatally bent upon mischief. It is not necessary that malice must have existed for any particular length of time and it may first come into existence at the time of the act or at any previous time."

2. There was some evidence that three shots had been fired. Two bullet wounds and two shells were found at the scene. The gun also contained a third shell in it when retrieved by the authorities after the defendant showed them where he had hidden it.

3. The defendant also argues that the evidence was not sufficient to support a verdict of voluntary manslaughter. In view of our finding that it supports a second degree murder conviction, we decline to discuss this point.

held in Syllabus Point 1 of *State v. Baker*, 177 W.Va. 769, 356 S.E.2d 862 (1987):

> "The amount of force that can be used in self-defense is that normally one can return deadly force only if he reasonably believes that the assailant is about to inflict death or serious bodily harm; otherwise, where he is threatened only with non-deadly force, he may use only non-deadly force in return."

*See also State v. Clark*, 175 W.Va. 58, 331 S.E.2d 496 (1985); *State v. Phelps*, 172 W.Va. 797, 310 S.E.2d 863 (1983); *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981); *State v. Green*, 157 W.Va. 1031, 206 S.E.2d 923 (1974).

■ Here, the evidence did not reveal that the victim was engaged in any conduct that would have led the defendant to believe that the victim was about to inflict death or serious bodily harm on him. The defendant did not testify at trial. His statement to the police which was placed in evidence was to the effect that the victim "hit me with his fist and knocked me down on the pavement. We were wrestling around on the ground. I had a gun in my back pocket ... I remember seeing the gun laying on the street. I heard a shot and I did not know who got shot." No defense witnesses testified as to any acts of the victim that would give rise to any inference that the victim was attempting to utilize any force that would create an imminent danger of death or serious bodily injury to the defendant.[4]

4. There were four witnesses who were present prior to the time of the shooting: the victim, Mr. Clay, Mr. DeBoard, and the defendant. As earlier noted, the defendant did not testify. Mr. DeBoard claimed that the defendant and the victim ended up arguing in back of his pick-up truck. He did not look back until he heard a shot and then went to the back of the truck and saw the defendant on his back and the victim on his knees. At this point, the defendant got up and they left the scene.

5. Courts have also held under the parenthetical language that lack of subject matter jurisdiction and the failure to charge an offense may be raised at any time, even on appeal. *United States v. Ayarza-Garcia*, 819 F.2d 1043 (11th Cir.), *cert. denied*, 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404, (1987); *United States v. Watkins*,

## IV.

The defendant's next assignment of error is that the indictment should have been dismissed because of misstatements to the grand jury by one of the investigating officers. Under Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure "[t]he following must be raised prior to trial: ... (2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)[.]"[5]

■ Our rule is identical to the federal rule, and the federal courts have uniformly concluded that challenges to the indictment based on irregularities during grand jury deliberations must be raised under Rule 12(b)(2), Fed.R.Crim.P., prior to trial.[6] *E.g., United States v. Nunez–Rios*, 622 F.2d 1093 (2d Cir.1980); *United States v. Cathey*, 591 F.2d 268 (5th Cir.1979); *United States v. Burreson*, 643 F.2d 1344 (9th Cir.), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135, (1981); *United States v. Nunez*, 668 F.2d 1116 (10th Cir.1981); *see generally* 8 Moore's Federal Practice: Criminal ¶ 12.03(2) (2d ed. 1987).

■ In a related area, we have concluded that where trial counsel has filed a motion under Rule 12, the failure to press for a ruling on the motion prior to trial amounts to a waiver of the objections con-

709 F.2d 475 (7th Cir.1983); *United States v. Isenhower*, 754 F.2d 489 (3d Cir.1985); *United States v. Clark*, 646 F.2d 1259 (8th Cir.1981); 1 C. Wright, Federal Practice & Procedure: Criminal 2d § 193 (1982).

6. This is made clear by the Federal Advisory Committee notes to Rule 12(b)(2), which identifies some of the typical grand jury defects that must be made by motion prior to trial: "disqualification of individual grand jurors, presence of unauthorized persons in the grand jury room, other irregularities in grand jury proceedings...." We also observe that Rule 12(f), W.Va.R.Crim.P., provides, in part, that the "[f]ailure by a party to raise defenses or objections or make requests which must be made prior to trial ... may constitute waiver thereof...."

tained in the motion. *See State v. McKinney,* 178 W.Va. 200, 205, 358 S.E.2d 596, 601 (1987); *State v. Moran,* 168 W.Va. 688, 691, 285 S.E.2d 450, 453 (1981). Other courts have reached a similar conclusion. *People v. Thibudeaux,* 54 Ill.Dec. 275, 98 Ill.App.3d 1105, 424 N.E.2d 1178 (1981); *Boone v. State,* 291 So.2d 182 (Miss.1974). In this case, a motion was filed on July 7, 1985, complaining in general about prejudicial remarks made by Deputy Sheriff Rose about the defendant to the grand jury in response to their questions. However, the record does not disclose that the motion was ever brought on for hearing before the trial court. In view of the foregoing law, we find this point to have been waived.[7]

### V.

The defendant's final assignment of error is that one of the jurors had been convicted of a felony and, under W.Va. Code, 52–1–2 (1957), was disqualified from serving.[8] This fact was not discovered until several months after trial. An affidavit was obtained from the juror which indicates that during the deliberations, he and three other jurors were inclined toward acquitting the defendant. When he revealed that he was an ex-felon, the other three jurors then shifted to a guilty verdict. He also agreed to the guilty verdict. Two other juror affidavits tended to support these facts.

The record at trial reveals that after the verdict was announced, the jurors were individually polled and all agreed with the verdict. It also appears that the court asked several questions about the qualifications of the jury, but the jury was not asked if any of them had been previously convicted of a felony. Counsel was permitted an individual voir dire, but this question was not asked.

▪ Initially, we observe that the statute uses the term "infamous crime." The State appears to concede that a felony is an "infamous crime" as it is punishable by imprisonment in the state penitentiary, and we have so held in *State v. Maynard,* 170 W.Va. 40, 45, 289 S.E.2d 714, 718 (1982):

> "At common law 'infamous' crimes were treasons or felonies which were deemed to render their perpetrators infamous.... In *Isaacs v. Board of Ballot Commissioners,* 122 W.Va. 703, 12 S.E.2d 510 (1940), we followed this definition and concluded that 'infamous' crimes were felonies or offenses punishable by death or imprisonment in the state penitentiary." (Citations omitted).

Where a disqualified juror sits on a case and an attempt is made to set aside the verdict, several principles come into play. First, W.Va.Code, 56–6–15, provides that

7. This same rule is applicable to another assignment of error which is that the defendant wanted to utilize testimony from a Deputy Larabee to the effect that the State's medical examiner said the wounds were "point-blank" and that the victim may have been holding onto the gun when it was fired. This issue arose at the beginning of the defendant's case and there was some concern as to whether the testimony was admissible. The deputy could not be located and the court indicated it would not rule until the deputy was located. From the record it appears that this issue was never pursued further by defense counsel.

8. W.Va.Code, 52–1–2 (1957), provides:

> "The judge of any court may, in his discretion, exempt or excuse any person from jury service when it appears that such service would be improper or work an undue hardship. The following persons should be disqualified from serving on juries: Idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes."

This provision, along with other jury selection statutes, was revised by the 1986 Acts of the Legislature ch. 94. W.Va.Code, 52–1–1, *et seq.* (1986). *See* Comment, *Reforming West Virginia's Jury Selection Process: West Virginia, Jury Selection and Service Legislation of 1986,* 89 W.Va.L.Rev. 439 (1987). Disqualification from jury service is now found in W.Va.Code, 52–1–8 (1986). An additional disqualification is found in W.Va.Code, 56–6–14 (1923), and disqualifies any juror who "has any matter of fact to be tried by a jury, which shall have been or is expected to be, tried during the same term." *See Garrett v. Patton,* 81 W.Va. 771, 95 S.E. 437 (1918). Furthermore, we have held in Syllabus Point 1 of *State v. Cooper,* 74 W.Va. 472, 82 S.E. 358 (1914), that "[o]ne who served on the grand jury which returned an indictment is disqualified for service as a petit juror on the trial of a person thereby accused." *But see, State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1967). In addition, there are common law disqualifications which we have recognized. *State v. Beckett,* 172 W.Va. 817, 820–821, 310 S.E.2d 883, 887 (1983).

"[n]o exception shall be allowed against a juror, after he is sworn upon the jury, on account of his age or other legal disability, unless by leave of court."

 Second, notwithstanding the discretion given to the trial court to entertain the exception, we have formulated the rule that the disqualification must not have been disclosed on voir dire and could not have been discovered by reasonable diligence. Finally, it must be shown that the disqualification resulted in some substantial prejudice to the defendant. These points are set out in Syllabus Point 9 of *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951):

" 'The general rule, inhibiting allowance of a new trial for matter constituting a principal cause of challenge to a juror, existing before the juror was elected and sworn, unknown to the complaining party until after verdict, not disclosed on a thorough *voir dire* examination, and undiscoverable by the exercise of ordinary diligence, unless it appears from the whole case that the complainant suffered injustice by reason of the disqualification; applies in criminal cases * * *.' *State v. Harris,* 69 W.Va. 244, Syl. [71 S.E. 609]."

*See also State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974); *Watkins v. Baltimore & Ohio R.R. Co.,* 130 W.Va. 268, 43 S.E.2d 219 (1947); *State v. Jones,* 128 W.Va. 496, 37 S.E.2d 103 (1946).

 It would seem apparent that where there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification. In this case, no question was directed at the jury panel as to whether any member had been convicted of a felony.

 Courts in other jurisdictions have also reached the conclusion that the failure to ask voir dire questions relative to statutory or common law grounds for disqualification of jurors constitutes lack of diligence, and forecloses utilizing such disqualification to attack the jury verdict. *Winn v. State,* 44 Ala.App. 271, 207 So.2d 138 (1968); *People v. Crespin,* 635 P.2d 918 (Colo.App.1981); *Vaughn v. State,* 173 Ga. App. 716, 327 S.E.2d 747 (1985); *State v. Baxter,* 357 So.2d 271 (La.1978); *Commonwealth v. Fudge,* 20 Mass.App. 382, 481 N.E.2d 199, *appeal denied,* 396 Mass. 1102, 484 N.E.2d 102 (1985); *State v. Williams,* 190 N.J.Super. 111, 462 A.2d 182 (1983); *Perkins v. State,* 695 P.2d 1364 (Okla.Crim. 1985); *State v. Benson,* 235 Or. 291, 384 P.2d 208 (1963); *Commonwealth v. Shirey,* 333 Pa.Super. 85, 481 A.2d 1314 (1984); *Vivion v. Brittain,* 510 P.2d 21 (Wyo. 1973).[9] Because the defendant did not on voir dire raise the question as to the juror's prior felony conviction, we find that he has waived this error.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Boone County.

Affirmed.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

---

**9.** There is law that where the disqualification question is propounded and a juror answers untruthfully, then there is no waiver. *E.g., Beasley v. State,* 39 Ala.App. 182, 96 So.2d 693 (1957); *State v. Hermann,* 283 S.W.2d 617 (Mo. 1955); *State v. Williams, supra; Gann v. State of Oklahoma,* 397 P.2d 686 (Okla.1964).