IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 21-0401

_____

FILED
November 16, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
STATE OF WEST VIRGINIA,
Petitioner

v.

THE HONORABLE DAVID W. HUMMEL, JR.,
Chief Circuit Court Judge of the Circuit Court of Marshall County, West Virginia, and
MICHAEL DANIEL BOWMAN, Criminal Defendant Below and Party in Interest,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION

WRIT GRANTED

_____

Submitted: November 1, 2021
Filed: November 16, 2021

Patrick Morrissey, Esq.
Attorney General
Karen C. Villanueva-Matkovich, Esq.
Deputy Attorney General
Katherine M. Smith, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Petitioner

The Honorable David W. Hummel, Jr.
Circuit Court Judge
Second Judicial Circuit
Moundsville, West Virginia
Respondent

Matthew D. Brummond, Esq.
Public Defender Services
Appellate Advocacy Division
Charleston, West Virginia
Counsel for Respondent
 Michael Daniel Bowman

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds as stated in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

2.    "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review." Syllabus Point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

3.    "Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the

i

grand jury, either to determine its legality or its sufficiency." Syllabus, *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977).

4. "Challenges to an indictment based on irregularities during grand jury deliberations must be raised under Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure prior to trial." Syllabus Point 4, *State v. Bongalis*, 180 W. Va. 584, 378 S.E.2d 449 (1989).

5. "Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted." Syllabus Point 1, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996).

6. "'[D]ismisal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations.' *Bank of Nova Scotia v. United States,* 487 U.S. 250, 261-62, 108 S.Ct. 2369, 101 L.Ed.2d 228, 238 (1988) (citing *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct.

938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring))." Syllabus Point 6, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989).

Armstead, Justice:

Michael Daniel Bowman was convicted by a jury of his peers of five sexual offenses including sexual abuse by a custodian. His victims were young children. Following his convictions on these five sexual offenses, Mr. Bowman was sentenced to a term of incarceration of twenty-eight to seventy years. This Court affirmed his convictions. *See State v. Bowman*, No. 17-0698, 2018 WL 6131290 (W. Va. Nov. 21, 2018) (memorandum decision).

Mr. Bowman subsequently filed a petition for a writ of habeas corpus arguing that the indictments were defective because the grand jury foreperson did not sign them. The circuit court rejected this argument. However, while not raised by Mr. Bowman, the circuit court *sua sponte* found "fatal flaws" with the grand jury proceedings including "inflammatory remarks" made by an investigator who testified before the grand jury. Based on these conclusions, the circuit court ruled that Mr. Bowman's convictions on five sexual offenses were null and void, ordered that the indictments against him be dismissed with prejudice, ordered his immediate release from custody, and ordered that he no longer be required to register as a sex offender or be subjected to supervised release.

Following entry of the circuit court's order, the State of West Virginia filed this original jurisdiction proceeding. After review, we agree with the State and find that the circuit court far exceeded its authority in ordering the dismissal of the indictments, releasing Mr. Bowman from incarceration and the granting of additional relief. We

1

therefore grant the requested writ of prohibition. Mr. Bowman's convictions are reinstated forthwith, and we set aside all other relief contained in the circuit court's orders. This matter is remanded to the circuit court for immediate proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Michael Daniel Bowman was indicted on sex crimes against minor children, including various counts of first-degree sexual assault, first-degree sexual abuse, sexual abuse by a parent, guardian, or custodian or person in a position of trust, child abuse resulting in bodily injury by a parent, guardian or custodian, and second-degree sexual assault, for a total of thirteen separate counts. *See id.* at *1. These charges were alleged to have been committed against two minor children, E.W. and H.S. *See id.* During Mr. Bowman's trial, the prosecuting attorney moved to dismiss a total of four counts, all related to E.W., leaving nine to be considered by the jury. *See id.* at *2. At the conclusion of his jury trial, Mr. Bowman was convicted on five counts of sex crimes against minors. During her presentation to the grand jury, the prosecutor read the proposed indictments[1] for each of the five counts upon which Mr. Bowman was convicted to the grand jury.[2]

---

[1] The prosecutor had prepared the proposed indictments prior to the presentation to the grand jury.

[2] These counts of the indictment alleged:

(continued . . .)

2

Count I – 15-F-59

That sometime between the 1ˢᵗ day of January, 2001, and the 30ᵗʰ day of July, 2002, in the County of Marshall, State of West Virginia, MICHAEL DANIEL BOWMAN, whose date of birth is [redacted], as a parent, guardian, custodian or person in a position of trust to E. W., whose date of birth is [redacted], a minor female child, under the age of eighteen years, committed the offense of "sexual abuse by a custodian, parent or person in a position of trust", by unlawfully and feloniously engaging in sexual contact with the said E. W., to-wit: the said MICHAEL DANIEL BOWMAN engaged in sexual contact by forcing the said E. W. to touch his penis with her hand, the said E.W., being in the care, custody, and control of the said MICHAEL DANIEL BOWMAN, against the peace and dignity of the State, and in violation of §61-8D-5(a) of the West Virginia Code.

Count V – 15-F-59

That sometime between the 1ˢᵗ day of January, 2001, and the 30ᵗʰ day of July, 2002, in the County of Marshall, State of West Virginia, MICHAEL DANIEL BOWMAN, whose date of birth is [redacted] being fourteen (14) years old or more, committed the offense of "sexual abuse in the first degree", by unlawfully and feloniously subjecting E. W., whose date of birth is [redacted], a person who was twelve (12) years old or less and is not married to the said MICHAEL DANIEL BOWMAN, to sexual contact by forcing the said E. W. to touch his penis with her hand, against the peace and dignity of the State, and in violation of §61-8B-7(a)(3) of the West Virginia Code.

Count VII – 15-F-59

That sometime between the 1ˢᵗ day of January 2001, and the 30ᵗʰ day of July, 2002, in the County of Marshall, State of West Virginia, MICHAEL DANIEL BOWMAN, whose date

(continued . . .)

3

of birth is [redacted], being fourteen (14) years old or more, committed the offense of "First degree sexual assault", by unlawfully and feloniously engaging in sexual intercourse with E.W., a minor child whose date of birth is [redacted], a person who was twelve years old or less and is not married to the said MICHAEL DANIEL BOWMAN, by inserting his penis into her mouth, against the peace and dignity of the State, and in violation of §61-8B-3(a)(2) of the West Virginia Code.

Count I – 15-F-60

That sometime between the 1st day of January, 2006, and the 29th day of March, 2008, in the County of Marshall, State of West Virginia, MICHAEL DANIEL BOWMAN, committed the offense of "sexual abuse in the first degree", by unlawfully and feloniously subjecting H. S., a minor female child, [handwritten D.O.B. redacted] who is not married to the said MICHAEL DANIEL BOWMAN, to sexual contact by touching her breast with his hand, without her consent, the lack of consent resulting from forcible compulsion, against the peace and dignity of the State, and in violation of §61-8B-7(a)(1) of the West Virginia Code.

Count II – 15-F-60

That sometime between the 1st dayf [sic] of January, 2006, and the 29th day of March, 2008, at a date and time separate and apart from that set forth in Count One, in the County of Marshall, State of West Virginia, MICHAEL DANIEL BOWMAN, committed the offense of "sexual abuse in the first degree", by unlawfully and feloniously subjecting H. S., a minor female child, [handwritten D.O.B. redacted] who is not married to the said MICHAEL DANIEL BOWMAN, to sexual contact by touching her vagina with his hand, without her consent, the lack of consent resulting from forcible compulsion, against the peace and dignity of the State, and in violation of §61-8B-7(a)(1) of the West Virginia Code.

4

For these five convictions, Mr. Bowman was sentenced "to consecutive terms of incarceration that resulted in an effective sentence of not less than twenty-eight years nor more than seventy years." *Id.* at *3. Mr. Bowman was also ordered to serve a fifty-year period of supervised release and to register as a sex offender for life.

Mr. Bowman then filed various petitions for writs of habeas corpus and attendant motions pursuant to the Post-Conviction Habeas Corpus statute. *See* W. Va. Code §§ 53-4A-1 – 11 (2021 Supp). On April 13 and 14, 2021, the circuit court held a hearing on the underlying petition and the various motions. Mr. Bowman argued that the circuit court should dismiss the indictments because they were not signed by the grand jury foreperson. The circuit court concluded that the indictments were properly signed.

However, the circuit court *sua sponte* announced that it had found "fatal flaws … in the presentation of Mr. Bowman's case to the grand jury" and in its order dismissing the indictments made specific findings:

> First, this Court FINDS that Prosecuting Attorney Wade failed to instruct the Grand Jury as to the law to be applied by the Grand Jury. This point of error is undisputed by the State.
>
> Second, this Court FINDS that the Grand Jurors could not have applied the facts without first having the law. This is necessary in order to make a decision of whether there was probable cause to believe that Petitioner Bowman had committed some or all of the alleged offenses.
>
> Third, the Court FINDS the needless, inflammatory, and outrageous conduct by the prosecutor and her investigator, created an unlawful bias fully intended to sway the Grand

5

Jurors to find true bills on multiple sex charges against the Petitioner, without first examining any law, let alone pertinent law, and evidence necessary to substantiate a violation thereof.

The circuit court then detailed what it found to be "needless, inflammatory and outrageous":

Alarmingly, one thing the investigator did "instruct" the grand jurors about, was the fact that the Magistrate had already found probable cause at the preliminary hearing and that new charges were likely "forthcoming" out of Ohio County, West Virginia against the Petitioner. These comments are highly prejudicial.

The statements made by the investigator only had one purpose. That purpose was to improperly influence the Grand Jurors to sign the pre-printed indictment forms. There was no attempt to let the Grand Jury exercise discretion and apply the law. The only attempt that was being made was to improperly create a bias in their minds without any regard to the law or the facts regarding the Petitioner. Instead[,] the Grand Jurors were being influenced improperly into thinking that if the magistrate already found probable cause in this case then so should you.

The circuit court also took issue with other aspects of the investigator's testimony. These included references by the investigator to Mr. Bowman being held on a "very high" cash bond that was set by a magistrate who felt that Mr. Bowman would be a danger if he were let out of jail. At the end of his testimony, the investigator stated that he "hate[d] talking about [Mr. Bowman]." The circuit court was also critical of the investigator testifying in narrative form. Based upon what the circuit court "uncovered," it signaled its intent to look

6

behind other indictments handed down in the same term that Mr. Bowman's case was presented and to delve into "perhaps more."[3]

Based upon these findings, the circuit court dismissed the indictments against Mr. Bowman with prejudice. The circuit court also entered an Administrative Order that released Mr. Bowman from custody, declared that Mr. Bowman's convictions were null and void, withdrew the jury's guilty verdict against Mr. Bowman, expunged Mr. Bowman's convictions, vacated all fees & costs assessed against Mr. Bowman, and ordered that he no longer be required to register as a sex offender or be subject to fifty years of supervised release.

---

[3] Specifically, the circuit court found:

> More unsettling is that the former prosecutor's actions calls into question what happened during all the presentments during the November 2015 term and perhaps more. The Prosecutor's office after reviewing the Bowman transcript, requested the court reporter to transcribe Arthur Crow's Grand Jury transcript, another case that was presented during the November 2015 term of court. The court has already had a preliminary opportunity to review the Grand Jury transcript regarding Arthur Crow and has unfortunately noticed similar errors in that proceeding as well. The Prosecutor's office malfeasance did more than just open a can of worms, it may have opened Pandora's box, because it now calls into question all the other Grand Jury presentments during the November term of the Grand Jury and beyond.

The State of West Virginia then sought this writ to prohibit the circuit court from enforcing its orders.

## II. STANDARD OF REVIEW

This matter invokes this Court's original jurisdiction in prohibition. We have previously held that the State of West Virginia may petition this Court for a writ of prohibition because the State generally cannot appeal a criminal matter:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded by statute on other grounds as stated in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017). To grant a discretionary writ of prohibition, five factors must be considered:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4)

8

whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

The circuit court *sua sponte* granted relief after Mr. Bowman had filed a petition for Post-Conviction Habeas Corpus. *See* W. Va. Code §§ 53-4A-1 – 11 (2021 Supp).[4] Under that statute, "we are given broad powers in fashioning the form of relief accorded." *State ex rel. McMannis v. Mohn*, 163 W. Va. 129, 141, 254 S.E.2d 805, 811 (1979). In that posture, we have adopted a three-prong standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a de novo review.

Syllabus Point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). We now turn to the issues raised by the petition.

---

[4] Under the provisions of West Virginia Code § 53-4A-9(a) (1967), "[a] final judgment entered under the provisions of this article by a circuit court . . . may be appealed by the petitioner or the State to the Supreme Court of Appeals." Donnie Ames, Superintendent of the Mt. Olive Correctional Complex and the State of West Virginia filed a direct appeal of the underlying order in case number 21-0402 before this Court. The State sought and received a stay of that appeal pending the outcome of this writ petition.

## III. ANALYSIS

Our case law is abundantly clear. Except in very limited circumstances involving willful and intentional fraud, a circuit court exceeds its lawful authority when it goes behind the four corners of an indictment:

> [I]t is not usual, under practice in this state, to challenge an indictment on either the ground of want of sufficient evidence to sustain it or even the incompetency of evidence before the grand jury. It would be a practice of great inconvenience. Very plainly a court cannot go into the question of the weight and sufficiency of the evidence to sustain the indictment, and thus review the action of the grand jury. That would be for the court to usurp the office of the grand jury, and also to usurp the office of the petit jury, because the court is not the judge of the weight of the evidence, but the grand jury in the first instance is, and finally the petit jury. When once an indictment is returned a true bill, it has legal force. You cannot go behind the return. It is not void, and it only remains to try its truth.

*State v. Woodrow*, 58 W. Va. 527, 532, 52 S.E. 545, 547 (1905). In *Woodrow*, we held "[a]n indictment cannot be quashed because it rests in whole or part on incompetent evidence." Syllabus Point 4, *Id*. However, in rare instances a court may delve further into what transpired in the grand jury. In those cases, we have established a very narrow path for circuit courts to follow, so as not to usurp the grand jury's role in our justice system, "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syllabus, *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977). In this matter, there were no allegations of willful, intentional fraud in the grand jury proceedings raised in the habeas corpus petition filed below. Moreover, the

10

alleged grand jury deficiencies cited by the circuit court do not implicate willful and intentional fraud.

Importantly, Mr. Bowman raised no issue with the indictments pretrial as required under Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure which provides:

> The following [defense, objection, or request] must be raised prior to trial: ... (2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Pursuant to this rule, we have held that "[c]hallenges to an indictment based on irregularities during grand jury deliberations must be raised under Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure prior to trial." Syllabus Point 4, *State v. Bongalis*, 180 W. Va. 584, 378 S.E.2d 449 (1989).

Despite the lack of allegations of willful, intentional fraud in the procurement of the indictments, Mr. Bowman alleged in his habeas petition that the foreperson of the grand jury did not sign the indictments. On that issue, the circuit court should have deemed the issue waived for failing to raise it pretrial. Nonetheless, the circuit court considered Mr. Bowman's claim in this regard and found that the foreperson of the grand jury did sign the indictments. Absent any allegations of willful, intentional fraud, the circuit court had no authority to look behind the indictments. At this point, the circuit court's inquiry should

11

have ceased. However, the circuit court's order stated that "[t]he sufficiency of the evidence [supporting the indictment] cannot be assumed by this court." This statement is counter to the law:

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

Syllabus Point 1, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996). Thus, we conclude that the circuit court should have assumed the validity of the indictments. The circuit court clearly lacked the authority to look behind them, absent any allegation of willful, intentional fraud.

Further, the dismissal of the indictments and grant of other relief was after a jury returned a verdict against Mr. Bowman convicting him of five criminal acts. We have long held that once a trial is had, an error in the grand jury proceedings is cured:

> Often incompetent evidence is heard by grand juries, not merely incompetent matter, but incompetent witnesses. It would be an inconvenient and dangerous practice to institute preliminary investigation to ascertain what incompetent evidence was before the grand jury, how much good and how much bad evidence, and what its weight. Where there is any competent evidence before the grand jury, it cannot be quashed, though there may have been some incompetent evidence of witnesses, say the authorities just cited. This proposition would hardly seem to require authority. The court

12

cannot say on what the grand jury found its indictment, or how far the incompetent evidence operated, or on what members it operated. You cannot call each member and ascertain on what evidence he formed judgment. Next, take the case where the indictment rests alone on evidence of an incompetent witness. In such cases some authorities say that the indictment must go, but, even here, why shall we not say that on the trial the state may furnish other evidence ample to sustain its indictment which was not before the grand jury? The indictment is only a charge, to be sustained by competent evidence on the trial. So the court said in *State v. Dayton*, [23 N.J.L. 49], 53 Am. Dec. 270 [1850]. The accused can have the evidence, if incompetent, excluded on the trial. True, it is hard on him to be put to trial upon an indictment resting alone on incompetent evidence, but grand juries are not good judges of competency, and oftentimes do not consult the court. It would be very bad practice, endless inconvenience, to have a full preliminary trial of competence of evidence before the grand jury in many cases. How far would the practice go? Does the inconvenience to the accused justify the institution of such a practice? Are not his rights fully vindicated by his right to exclude improper evidence on the trial?

*Woodrow*, 58 W. Va. at 533, 52 S.E. at 547. Similarly, we have stated:

It is the policy of the law, in the interest of justice, that this preliminary hearing should be conducted with closed doors. This secrecy is not only consistent with, but essential to, the nature of the institution. The sufficiency of the proof cannot be inquired into to invalidate an indictment found by a lawfully constituted grand jury. The presumption is that every indictment is found upon proper evidence. If anything improper is given in evidence before a grand jury, it can be corrected on the trial before the petit jury.

*Noll v. Dailey*, 72 W. Va. 520, 522, 79 S.E. 668, 669 (1913), *citing Wadley v. Commonwealth*, 35 S.E. 452, 453 (1900). More recently, we have reaffirmed this maxim when we cited, with approval, reasoning from our federal courts that "errors before a grand jury, such as perjured testimony, could easily be corrected during a trial with its incumbent

13

procedural and evidentiary safeguards." *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 667, 383 S.E.2d 844, 849 (1989) (citing *United States v. Udziela*, 671 F.2d 995 (7th Cir. 1982), *cert. denied*, 457 U.S. 1135 (1982)).

Here, the circuit court not only erroneously looked behind the indictments but did so after a jury trial in which Mr. Bowman was convicted of five sex crimes against children. Mr. Bowman never raised any pretrial issue of willful, intentional fraud in the procurement of his indictments. Even if improper evidence was adduced before the grand jury, Mr. Bowman's subsequent trial by petit jury cured any infirmity.

Although we believe this precedent resolves the issues raised here, we nonetheless find that, even if the circuit court could have properly considered the grand jury presentment, we still find no error. First, we disagree that the prosecutor did not advise the grand jury as to the elements of the crimes to be presented. Second, we also do not find there was "needless, inflammatory, and outrageous conduct by the prosecutor and her investigator, [which] created an unlawful bias."

In our review of the grand jury transcript, during her presentation, the prosecutor read the text of the proposed indictments to the grand jury. Indeed, in its order, the circuit court states "[t]he prosecutor never instructed the Grand Jury that the indictment would mirror the statutes on §61-8D-5, §61-8B-7, §61-8B-3, §61-8D-3, and §61-8B-4." Plainly, the circuit court recognized that the proposed indictments were read to the grand

14

jury and they track the statutes but took issue with the prosecuting attorney's mere reading of the proposed indictments to the grand jury. We would note that "[a]n indictment as drafted is presumed sufficient if it tracks the statutory language, cites the elements of the offense charged, and provides the other essential details, such as time, place, and persons involved, to provide adequate notice to the defendant." *Miller*, 197 W. Va. at 600, 476 S.E.2d at 547. Here, the prosecutor read the proposed indictments to the grand jury, the circuit court acknowledged such, and the indictments as returned by the grand jury track the statutory language of the statutes cited on their face. Thus, when the prosecutor read the proposed indictments, the grand jury was instructed as to the elements of the crimes charged.

Additionally, the circuit court conflates the duty of the prosecutor before the grand jury with the duty of the circuit court. In *State v. Pickens*, 183 W. Va. 261, 395 S.E.2d 505 (1990), this Court reiterated the long-standing rule that, "A prosecuting attorney can only appear before the grand jury to present by sworn witnesses evidence of alleged criminal offenses, and to *render court supervised instructions*, W.Va. Code § 7-4-1 (1976 Replacement Vol.). . . ." Syllabus Point 1, *Id* (emphasis added).

We conclude that it is the duty of the circuit court, rather than the duty of the prosecutor, to instruct the grand jury. This is based on our holding that the prosecuting attorney can only "render court supervised instructions." Syllabus Point 1, in part, *id*., and the statutory requirement that "[t]he grand jurors, after being sworn, shall be charged by

15

the judge, and shall then be sent to their room." W. Va. Code § 52-2-6 (1923). We previously cited to *Pickens* and other precedents of this Court, and we now reaffirm that, "[a] prosecutor before the grand jury performs a limited role. The circuit judge instructs the grand jury on the elements of the various crimes that are presented to it. The prosecutor presents witnesses to establish probable cause that a crime was committed." *State ex rel. Knotts v. Watt*, 186 W. Va. 518, 522, 413 S.E.2d 173, 177 (1991) (citations omitted). Thus, although a prosecutor may provide court-approved instructions as to the elements of the crimes presented, it is circuit court's duty to first instruct the grand jury on the elements.[5] From our review of the record, we conclude that the grand jury was instructed as to the elements of the indicted crimes when the prosecutor read the proposed indictments that tracked the statutory language to the grand jury.

With regard to the issue of whether the statements by the investigator warranted dismissal of the indictments, we have held:

> "[D]ismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 261-62, 108 S.Ct. 2369, 101 L.Ed.2d 228, 238 (1988) (citing *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)).

---

[5] The appendix record does not contain the circuit court's general grand jury charge. During the hearing below, the circuit court read a portion of that general charge, that it reads "every single time." In that charge, the court stated, "[the prosecutor] is authorized to present court-approved instructions to you that relate to the essential elements of the offenses under investigation."

16

Syllabus Point 6, *Pinson*. "[I]n reviewing a case where improper evidence has been submitted to a grand jury, a court must ascertain whether there was significant and material evidence presented to the grand jury to support all the evidence of the alleged criminal offense. The court must then determine whether the improper evidence substantially influenced the decision to indict." *State v. Bonham*, 184 W. Va. 555, 558, 401 S.E.2d 901, 904 (1990). This is because:

> Dismissal of an indictment based on improper testimony of a trivial or inconsequential nature would neither be in the interests of the efficient administration of justice, nor would it be dictated by the court's duty to protect the defendant's constitutional rights. In this review, the court must also ascertain that there was significant and material evidence presented to the grand jury to support all elements of the alleged criminal offense.

*Pinson*, 181 W. Va. at 669, 383 S.E.2d at 851. Although the investigator arguably made some statements that may have been excluded from a petit jury's consideration, the law is very clear that absent any evidence of willful, intentional fraud, the circuit court had no authority to question the evidence considered by the grand jury. Clearly, there is no evidence of such. The investigator's testimony established all of the elements of the crimes charged. Moreover, it has not been established that his testimony impacted the grand jury's return of a true bill, any issue with regard to the presentation was rendered inconsequential by the jury's verdict finding Mr. Bowman guilty, and, most importantly, the statements did not amount to prosecutorial misconduct.

17

## IV. CONCLUSION

For the foregoing reasons, we find clear error and grant the requested writ, vacating *in toto* the orders entered by the circuit court.[6]  Because this opinion reinstates criminal convictions, in the interest of public safety, we direct the circuit court to expedite this matter and The Clerk of Court to issue the mandate forthwith.

Writ granted.  Mandate issued forthwith.

---

[6] Because we are reinstating Mr. Bowman's convictions and vacating all orders entered below flowing from the circuit court's dismissal of the indictments, we do not provide further analysis regarding the circuit court's expungement of Mr. Bowman's convictions.  Once the convictions are reinstated, the expungement and all other relief granted below flowing from the dismissal orders must also be set aside.

18